**Page 1**

```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
                  ROCK ISLAND DIVISION

TERESA SCHULTZE,            )
                            )
        Plaintiff,          )
                            )
    vs.                     )  NO. 03 CV 04089
                            )
GOODRICH EQUIPMENT COMPANY, )
                            )
        Defendant.          )
```

THE DISCOVERY DEPOSITION of DANIEL CHURCHILL, called for examination pursuant to the provisions of the United States District Court for the Central District of Illinois and Rules of the Illinois Supreme Court as they apply to the taking of discovery depositions, taken before Kathy L. Johnson, C.S.R., a Notary Public in and for the County of Henry, State of Illinois, on the 20th day of September, 2004, at the hour of 11:30 a.m., at the Mark of the Quad Cities, 1201 River Drive, Room 3, Moline, Illinois 61265.

ADVANTAGE REPORTING SERVICES

**Page 2**

APPEARANCES

MS. SUSAN BOGART, ESQ.
Law Offices of Susan Bogart
30 North LaSalle Street
29th Floor
Chicago, Illinois 60602
312/263-0900
    Appeared on behalf of the Plaintiff;

MR. MARK CHURCHILL, ESQ.
Churchill & Churchill, P.C.
1610 Fifth Avenue
Moline, Illinois 61265
309/762-4690
    Appeared on behalf of the Defendant.

WITNESS: DANIEL CHURCHILL

Examination by:                              Page:
Ms. Bogart                                     3

CERTIFIED QUESTIONS:
Page 16; line 23
Page 19; lines 18-20
Page 27; lines 5-8

EXHIBITS

(None were marked.)

Signature reserved

CERTIFICATE OF REPORTER                      53-54

**Page 3**

DANIEL S. CHURCHILL, being first duly sworn on oath, was examined and testified as follows:

EXAMINATION BY MS. BOGART:

Q. Can you please state your full name for the court reporter?
A. Daniel S. Churchill.
Q. And can you tell us how you're employed?
A. I'm an attorney licensed to practice law in the State of Illinois --
Q. Okay.
A. -- in the local Federal court that this case has been pending in in Iowa.
Q. And you practice in what form?
A. Moline, Illinois.
Q. Excuse me?
A. Moline, Illinois.
Q. Right. In what form? Do you have a firm?
A. Yes.

**Page 4**

Q. Churchill and Churchill?
A. Churchill and Churchill, PC.
Q. Okay.
A. And I'm president and an employee.
Q. Do you currently represent Goodrich Equipment Company?
A. Our firm does, and I'm the person assigned responsibility for --
Q. And you represent Goodrich Equipment Company in the case of Schultze versus Goodrich, 03 CV 04089 pending in the Central District of Illinois?
A. Yes, I do.
Q. Okay.
A. Or we do.
Q. When did the representation of Goodrich begin in so far as any activity involving Teresa Schultze?
A. Probably July 10th of 2003. When I say probably, that's my best estimate today.
Q. Okay. And how is it that that began?
A. I received a phone call from a client.
Q. And who on behalf of the client?

Page 5

```
1    A. Roger Goodrich.
2    Q. And when was that?
3    A. I think the middle part of the day or late
4    morning.  I don't remember exactly.  Sometime
5    prior to the phone call that you're --
6    Q. All right.  And do you have any notes
7    that would refresh your recollection as to the,
8    more exactly as to the time?
9    A. The only, the only notes I would have
10   would be attorney/work product.
11   Q. I understand.
12   A. You know, I would have taken maybe some
13   notes.  I might have gotten an e-mail from him.
14   Q. Okay.  And that would pinpoint more
15   specifically the exact time on the e-mail?
16   A. Yes.  I don't remember.  It was either
17   late morning or early afternoon.
18   Q. Do you have those with you?
19   A. I brought them with me, yes.
20   Q. All right. Would you look at them, if you
21   don't mind, to see if you can pinpoint more
22   exactly the time of the initial contact?
23             MR. CHURCHILL:  Well, actually I
```

Page 6

```
1    think we're going to object to that because I
2    think the witness stated those notes were work
3    product.
4             The fact that they are, that such
5    a note existed, he testified that anything
6    beyond what was actually stated in those notes
7    are protected under the work product doctrine.
8             MS. BOGART:  Okay.  Well, the
9    work product doctrine, neither the work product
10   nor the attorney/client privilege doctrine
11   protects dates, times and some general
12   descriptive --
13            MR. CHURCHILL:  The work product
14   doctrine protects any notes that are taken.
15            MS. BOGART:  I'm not asking for
16   the notes.  I'm asking --
17            MR. CHURCHILL:  You're asking for
18   something pertaining, that he, were written in
19   his notes.
20            MS. BOGART:  All right.  Excuse
21   me.
22            MR. CHURCHILL:  Or that would
23   have been part of his notes.
```

Page 7

```
1             MS. BOGART:  Excuse me.  The work
2    product doctrine and the attorney/client
3    privilege doctrine do not protect dates, times,
4    any general description of events.
5             If you look at Rule 26 of the
6    Federal Rules -- let me, excuse me.
7             If you look at the Rule 26 of the
8    Federal Rules of Civil Procedure, when a
9    privilege is claimed, no matter what is claimed
10   under whatever bases, the time, the substance,
11   who's involved, and the dates are specifics
12   that are required to be produced.
13            MR. CHURCHILL:  A general
14   description of what the notes were.
15            MS. BOGART:  As well as dates and
16   times and events.
17            MR. CHURCHILL:  Well, we're going
18   to take a moment --
19            MS. BOGART:  And so that, so
20   that --
21            MR. CHURCHILL:  Well, we're going
22   to take a moment to review that.
23            MS. BOGART:  Excuse me.  So that
```

Page 8

```
1    I may make the record, so that one can assess
2    whether the privilege does or does not apply
3    and the pertinent data.
4             So if the first communication is
5    in fact prior to the one --
6             THE WITNESS:  It's in the
7    briefcase.
8             MS. BOGART:  -- that's the
9    subject -- it's Rule 26.
10            MR. CHURCHILL:  Yes, I do know
11   that.
12            MS. BOGART:  It's five.  I think
13   it's section, subsection five.
14            THE WITNESS:  It's the big Rule
15   volume that we brought along, Mark.
16            MR. CHURCHILL:  Right.  I've got
17   it here.  That is my --
18            MS. BOGART:  It's the Federal
19   Rules.
20            MR. CHURCHILL:  -- Rule 26.  The
21   party shall make the claim expressly and shall
22   describe the nature of the documents,
23   communications, or things not produced or
```

Page 9

```
 1   disclosed in a manner that, without revealing
 2   information itself privileged or protected,
 3   will enable other parties to assess the
 4   applicability of the privilege or protection.
 5           MS. BOGART: Right.
 6           MR. CHURCHILL: And nowhere in
 7   there does it state that times, dates are not
 8   protected. I'm stating his whole notes are
 9   work product.
10           MS. BOGART: That's fine. Then I
11   will certify the question so that we can get to
12   the judge the time. And that's all I'm
13   looking for.
14           I'm not looking for anything
15   substantive, but I'm entitled to know if these
16   notes were taken for a conversation that
17   occurred at the time of the conversation the
18   judge has already ruled is not protected, or if
19   these are events that occurred before.
20           The only way to do that, if July
21   10th is the date, is to know the approximate
22   time. So I'm asking for a piece of
23   information --
```

Page 10

```
 1           MR. CHURCHILL: I believe through
 2   further questions you can get that information
 3   without --
 4           MS. BOGART: He can't recall the
 5   specific time.
 6           THE WITNESS: I did answer the
 7   question. It was either late morning or early
 8   afternoon. What's the phone call you're
 9   concerned with?
10   BY MS. BOGART:
11   Q. Well, you can answer the question. I'll
12   tell you --
13   A. No. I said it was late morning when I
14   received some information from my client or
15   early afternoon.
16           I don't remember whether I was in
17   the office when I got it. I know there's a
18   date on the e-mail and a time e-mail. But I
19   know I got it sometime mid part of the day.
20   Q. Okay. So the communication, are we
21   talking about one or two communications? Are
22   we talking about a phone call and an e-mail?
23   A. No. I think it was an e-mail and possibly
```

Page 11

```
 1   a phone call to go with it after the e-mail had
 2   arrived.
 3   Q. Two communications?
 4   A. With the client, yes.
 5   Q. And you can't tell me the specific time of
 6   either of those?
 7   A. Well, I gave you the best recollection I
 8   have is late morning, early afternoon.
 9   Q. Right.
10   A. But they both definitely preceded any
11   involvement with me with your client in which
12   she could hear my comments.
13   Q. Okay. Well, with all due respect, I'm not
14   required to rely on his best recollection.
15           MR. CHURCHILL: That's not, I'm
16   not disputing that.
17           MS. BOGART: And all I'm asking
18   -- excuse me. And all I'm asking is to allow
19   him to refresh his recollection as to the more
20   specific time he --
21           THE WITNESS: But I can't, I
22   can't do anything from that document to answer
23   your question, counsel.
```

Page 12

```
 1           MS. BOGART: Absolutely
 2   you could.
 3           THE WITNESS: Because I don't
 4   know when I would have looked at the e-mail
 5   that I received from the client.
 6   BY MS. BOGART:
 7   Q. But you would know, for example, when the
 8   phone call came.
 9   A. No.
10   Q. And then --
11   A. I didn't, I didn't keep any notes of that.
12   Q. All right.
13   A. There's no notes of the phone call that
14   I'm referencing, and there's no notes made on
15   the e-mail concerning the content of the
16   e-mail.
17   Q. Okay.
18   A. Okay.
19   Q. So when you say that you received this
20   communication or communications from your
21   client late a.m., middle, or late in the
22   morning, early afternoon or middle of the
23   afternoon, you can't tell me what time you
```

## Page 13

```
 1  actually spoke to the client?
 2  A. I can't. That's right.
 3  Q. Okay.
 4  A. There's nothing I could look at that could
 5  tell me that.
 6  Q. After you received an e-mail, which I
 7  understand to be the first communication
 8  containing some information apparently related
 9  to Miss Shultze, what if anything occurred next
10  in so far as a communication, meeting,
11  discussion, event between you and Goodrich
12  Equipment Company as it relates to Miss
13  Schultze?
14  A. There may have, the phone call may have
15  preceded the e-mail.
16  Q. And do you have anything that would
17  refresh your recollection?
18  A. No, there's nothing.
19  Q. What time was the phone call?
20  A. As I said, late morning, early after
21  lunch.
22  Q. Did you actually speak to the client?
23  A. I recall that I spoke to him sometime,
```

## Page 14

```
 1  yes.
 2  Q. I'm asking about this particular phone
 3  call beginning --
 4  A. Yes, I spoke to Roger Goodrich.
 5  Q. As a result of that phone call what if
 6  anything happened next as it pertains to Miss
 7  Schultze?
 8  A. Involving me?
 9  Q. You.
10  A. Nothing that I know of except I got a
11  phone call later in the day then.
12  Q. Okay. So you did nothing until later.
13  And anybody in your firm do anything?
14  A. No.
15  Q. And the e-mail that you received, when do
16  you recall in relationship to the telephone
17  call, the first telephone call, reviewing the
18  e-mail?
19  A. I've answered that. I don't recall if I
20  reviewed it promptly on its being received or
21  if it was a short time after.
22          It was either late morning or
23  early afternoon before I looked at the e-mail.
```

## Page 15

```
 1  Q. And who was the e-mail, who authored the
 2  e-mail?
 3  A. I believe Roger Goodrich.
 4  Q. And who was the recipient?
 5  A. Churchill and Churchill, PC.
 6  Q. And what did the e-mail contain?
 7          MR. CHURCHILL: Objection.
 8  Attorney/client privilege. I instruct the
 9  witness not to --
10  BY MS. BOGART:
11  Q. Well, did it contain information from
12  Mr. Goodrich?
13          MR. CHURCHILL: That is protected
14  information. That's protected.
15          MS. BOGART: Not the fact of it,
16  no, because facts are not protected. Only --
17          MR. CHURCHILL: He's already
18  testified that he got an e-mail from his
19  client.
20          MS. BOGART: Okay. It doesn't
21  make it privileged necessarily.
22          MR. CHURCHILL: You're asking him
23  what it contained. What it contained is
```

## Page 16

```
 1  privileged.
 2          MS. BOGART: Excuse me. I said
 3  that it contained information --
 4          MR. CHURCHILL: Correct.
 5          MS. BOGART: -- from the client.
 6  That's a yes or no. It doesn't reveal the
 7  content.
 8          MR. CHURCHILL: I'm still going
 9  to object to anything in that e-mail as
10  attorney/client privilege.
11          THE WITNESS: Okay. I'll answer
12  the question then over the objection. The
13  objection stands?
14          MR. CHURCHILL: Yes.
15          THE WITNESS: Certainly it
16  contained information from my client.
17  BY MS. BOGART:
18  Q. Okay.
19  A. I mean, what's the purpose of an e-mail?
20  Q. Was there any other recipient of the
21  e-mail?
22  A. No.
23  Q. Did it contain any attachment?
```

**Page 17**

```
 1   A. No.
 2   Q. Did it seek specific advice?
 3              MR. CHURCHILL: Objection.
 4   Attorney/client privilege. Anything --
 5              MS. BOGART: I'm not asking what
 6   the advice was, I'm asking what --
 7              MR. CHURCHILL: And I'm stating
 8   anything in that communication is privileged.
 9              MS. BOGART: And I'm saying that
10   you can't meet that test without more
11   information.
12              THE WITNESS: I say you're wrong
13   and I'm not answering that question.
14   Attorney/client privilege is invoked for that
15   question.
16              MR. CHURCHILL: You're asking
17   what did that say.
18              MS. BOGART: No. But if it
19   didn't seek advice then it may or may not fall
20   under the attorney/client privilege.
21              MR. CHURCHILL: Attorney/client
22   privilege is any communication from an attorney
23   to his client and vice versa.
```

**Page 18**

```
 1              MS. BOGART: On the contrary,
 2   you've got to give enough information about
 3   something so the Court is in a position to
 4   assess whether it is or it isn't privileged.
 5   You're required to make a log, okay?
 6              MR. CHURCHILL: The witness has
 7   already testified.
 8   BY MS. BOGART:
 9   Q. All right. So you're refusing to answer
10   the question and giving me some descriptive
11   information about the e-mail?
12   A. I'm following the advice of my counsel
13   today.
14   Q. That's all I'm asking.
15   A. I'm refusing to answer that question.
16   Q. Okay. And you're refusing to provide me
17   with any descriptive information not revealing
18   the attorney/client communication as you claim
19   it holds that would let me know what the e-mail
20   contains?
21   A. I refuse to answer that question. I'm not
22   going to state it anymore.
23   Q. And you're refusing to provide any further
```

**Page 19**

```
 1   information?
 2   A. That's not what I said.
 3   Q. Well, I'm asking --
 4   A. You haven't asked me another question.
 5   Q. Yeah, yeah, I have.
 6   A. Ask me another question.
 7   Q. Yeah. My question is, are you refusing to
 8   provide me any information that would describe
 9   in a generic way the contents of the e-mail
10   without revealing attorney/client?
11   A. I'm refusing to answer a question that
12   addresses an inquiry to the content of the
13   e-mail from my client.
14   Q. Okay.
15              MS. BOGART: So please certify
16   the question.
17          (Question certified, page 16,
18                line 23.)
19   BY MS. BOGART:
20   Q. Did the e-mail in any way relate to the
21   events which occurred later in the day on July
22   10th?
23              MR. CHURCHILL: Objection.
```

**Page 20**

```
 1   Attorney/client privilege.
 2              THE WITNESS: It's impossible
 3   that an e-mail sent prior to the events of
 4   later in the day could have incorporated those
 5   events. They wouldn't have been known.
 6   BY MS. BOGART:
 7   Q. I didn't ask that.
 8   A. Yes, you did.
 9   Q. I said did they relate.
10   A. I'm refusing to answer anything about the
11   contents of that e-mail as being
12   attorney/client privilege.
13   Q. Okay.
14              MS. BOGART: Please certify the
15   question.
16          (Question certified, page 19,
17                lines 18-20.)
18   BY MS. BOGART:
19   Q. What is the next communication that you
20   had with your client on July 10th?
21   A. I believe late in the day of July 10th,
22   late in the workday of July 10th of 2003.
23   Q. And approximately what time?
```

**21**

1  A. I remember the workday had about concluded
2  so it was late in the afternoon. Between 4:30
3  and 5:00 I would guess.
4  Q. And where were you?
5  A. In my office.
6  Q. And how were you contacted?
7  A. By telephone.
8  Q. Who contacted you?
9  A. Roger Goodrich.
10 Q. And where was he?
11 A. He was in his office in Geneseo, Illinois.
12 Q. Where in his offices?
13 A. I don't know. All I know is the call came
14 from Geneseo.
15 Q. What did he say to you and you to he?
16           MR. CHURCHILL: Objection.
17 Attorney/client privilege.
18           MS. BOGART: Well, the judge has
19 already ruled on it.
20           MR. CHURCHILL: No, I don't think
21 he did.
22           MS. BOGART: Yes, he did.
23           MR. CHURCHILL: No. He ruled

**22**

1  that --
2           MS. BOGART: So you want --
3           MR. CHURCHILL: To be clear, yes,
4  I was. That the communication which involved
5  these three individuals was not privileged; is
6  that correct?
7           MS. BOGART: Well --
8           THE WITNESS: That's correct.
9           MR. CHURCHILL: Yes.
10          MS. BOGART: And it didn't --
11          MR. CHURCHILL: And you didn't
12 ask that, ma'am.
13 BY MS. BOGART:
14 Q. Well, is this the communication in which
15 Miss Schultze became a party?
16 A. Subsequently, yes.
17 Q. Okay.
18          MR. CHURCHILL: We are asserting
19 attorney/client privilege to any conversation,
20 any subsequent conversation that did not
21 involve the three individuals that the judge
22 ruled was admissable.
23          MS. BOGART: All right.

**23**

1  BY MS. BOGART:
2  Q. What time was the beginning of this call?
3  A. I don't know exactly.
4           MR. CHURCHILL: Asked and
5  answered.
6  BY MS. BOGART:
7  Q. Do you have any notes that would reflect
8  the exact time that it began?
9  A. No.
10 Q. Would there be any telephone records which
11 would show the time that the call came in?
12 A. I don't know. Not at my end. I didn't
13 place the call.
14 Q. All right. Were there any billings from
15 your firm to Goodrich Equipment Company that
16 involved this telephone call?
17 A. I assume it's included in legal
18 representation, but I don't know that for a
19 fact. But it wouldn't identify the time of the
20 telephone call.
21 Q. Okay. And what happened after you
22 received a call from Roger Goodrich?
23 A. Mr. Goodrich and I discussed some

**24**

1  questions he had of me.
2  Q. Okay. And then what happened?
3           MR. CHURCHILL: Are we still
4  dealing with the same phone conversation?
5           MS. BOGART: I don't know.
6           MR. CHURCHILL: Well, you're
7  asking the question.
8  BY MS. BOGART:
9  Q. And then what happened?
10 A. During the same telephone call?
11          MR. CHURCHILL: We're going to
12 object to anything pertaining to this phone
13 conversation until Miss Schultze was involved.
14          MS. BOGART: I didn't ask about
15 its contents. I asked what happened.
16          MR. CHURCHILL: Well, I'm
17 instructing the witness not to testify to
18 anything pertaining to this phone conversation
19 until Miss Schultze was involved.
20          MS. BOGART: Excuse me.
21          THE WITNESS: Could you rephrase
22 your question?
23          MS. BOGART: But what happened

**25**

1   isn't an attorney/client communication, so if
2   you want to instruct your client that way then
3   I'm going to certify it and I'm going to move
4   for fees and costs.
5               MR. CHURCHILL: If you're --
6               MS. BOGART: If I have to come
7   back here -- excuse me. If I have to come back
8   here to ask an answer to this question which is
9   after the phone call came in and there was a
10  communication between Mr. Goodrich and
11  Mr. Churchill, what happened next.
12              MR. CHURCHILL: I guess I would
13  ask you to clarify.
14              MS. BOGART: And if he isn't
15  smart enough to avoid answering an
16  attorney/client communication or to say there's
17  an attorney/client communication, well then so
18  be it.
19  BY MS. BOGART:
20  Q. Go ahead.
21  A. Thank you. The phone call then included
22  your client as an additional party. I think
23  Mr. Goodrich had to go to her office with his

**26**

1   phone in order to engage Miss Schultze in the
2   conversation.
3               Now, I wasn't there so I don't
4   know about that, but I assume that's how it
5   happened.
6               All I know is the telephone call
7   continued on during a time that Miss Schultze
8   was present.
9   Q. How long was there a communication before
10  Miss Schultze became involved?
11  A. Very short.
12  Q. One minute?
13  A. It could have been a minute, half a
14  minute, I don't recall. But I know it was very
15  short.
16  Q. And what was said and by whom prior to the
17  time that you, Miss Schultze became involved?
18              MR. CHURCHILL: Objection.
19  Attorney/client privilege.
20  BY MS. BOGART:
21  Q. You agree with that?
22  A. I agree with that.
23  Q. You're going to abide by your --

**27**

1   A. Yes. That's attorney/client privilege.
2   What I'm talking about with Mr. Goodrich is
3   attorney/client privilege at that stage prior
4   to your client --
5   Q. Did you instruct --
6   A. -- being involved.
7   Q. Did you instruct your client in any way
8   prior to Miss Schultze -- well, did you
9   instruct your client to include Miss Schultze
10  on the communication?
11              MR. CHURCHILL: Objection.
12  Attorney/client privilege.
13              THE WITNESS: I agree that's
14  attorney/client privilege. I didn't instruct,
15  what I may have said with my client at that
16  time is attorney/client privilege with respect
17  to the pending issues.
18  BY MS. BOGART:
19  Q. All you have to do is tell me that you're
20  not going to answer the question.
21  A. I'm not answering that question.
22              MS. BOGART: Certify the
23  question, please.

**28**

1               (Question certified, page 27,
2                lines 5-8.)
3   BY MS. BOGART:
4   Q. What was said and by whom at the time Miss
5   Schultze became involved?
6   A. I don't know what was said by Miss
7   Schultze beause the audibility of the phone was
8   difficult to hear any comments. I don't even
9   know if she said anything. I only know what I
10  said.
11  Q. So is it your testimony that Mr. Goodrich
12  walked his telephone into Miss Schultze's
13  office to the best of your knowledge and that
14  Mr. Goodrich said nothing to you in the
15  presence of Miss Schultze?
16  A. I think he said in the presence of Miss
17  Schultze I'm going to put this on speaker
18  phone.
19  Q. Okay. And then what was said and by whom?
20  A. I think Mr. Goodrich in the presence of
21  Miss Schultze asked me what personal contents,
22  how do you define that term because Miss
23  Schultze was at that time I believe cleaning