**E-FILED**
Friday, 05 November, 2004  04:53:57 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| TERESA M. SCHULTZE, | ) | |
| Plaintiff, | ) | |
| | ) | NO. 03  Cv 04089 |
| v. | ) | Jury Trial Demanded |
| | ) | |
| GOODRICH EQUIPMENT COMPANY, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISQUALIFY DEFENSE COUNSEL**

Plaintiff, Teresa Schultze, by and through her attorney, Submits this Reply In Support of

Motion to Disqualify and, in support, states as follows.

**Background**

1. Plaintiff Schultze has filed the instant case alleging gender and retaliation

discrimination under Title VII of the 1991 Civil Rights laws, 42 U.S. C. Section 2000e.    See

Complaint at Law and Attached Right to Sue Letter.

2. Specifically, Plaintiff alleges that she was paid less than her similarly situated male

employees and that when she lawfully protested to her General Manager, Roger Goodrich, the

difference in pay and the failure of Goodrich Equipment Company to rectify the difference she

was fired. Id. and attached verification upon certification.

3. Plaintiff was fired on July 10, 2003. Id. and attached verification upon certification.

4. On July 10, 2003, prior to the time Plaintiff was fired, Plaintiff inquired of Roger

Goodrich, her General Manager, as to when she was going to receive the pay raise, previously

promised, that would bring her pay to a level equivalent to her similarly situated male employees.

5. Later that day, Roger Goodrich came into Plaintiff's office, fired her and ordered her to

gather and pack up her belongings, place them into a box and leave. During this process, Roger

Goodrich had attorney Dan Churchill on the line on his cellular phone and placed the cellular

phone on Plaintiff's desk so that Daniel Churchill could overhear the conversation between

Plaintiff and Roger Goodrich. Additionally, Daniel Churchill posed questions to his client

Goodrich, and to Plaintiff and the answers each gave contradicted each other. See Plaintiff's

Verification Upon Certification attached hereto.

6. The fact that attorney Dan Churchill's participated by cellular phone during the events

on July 10, 2003 at approximately 5:08 p.m. when Plaintiff was fired has been conceded by

Daniel Churchill. He has also conceded that he spoke to Mr. Goodrich earlier in the day on July

10, 2003 concerning Plaintiff.

8.  This matter is before this Court on Schultze's appeal of the Magistrate's denial

of her Motion to Disqualify.

9. On September 8, 2004, this Court held a hearing at which time it ruled that if Plaintiff

intended to call Daniel Churchill as a witness at trial, then Daniel Churchill could not represent

the defendant.

10. On September 28, 2004, per this Court scheduling order, Plaintiff notified this Court

that she intended to call Mr. Daniel Churchill as a witness concerning events on July 10, 2003.

11. On October 18, 2004, this Court held a hearing at which time it ruled that Mr. Daniel

Churchill could not represent defendant Goodrich. It set a briefing schedule on the issue of

whether the Churchill firm, consisting of Daniel Churchill and his son Mark D. Churchill, must

be disqualified.

12. The defendant submitted its memorandum on the issue of the disqualification of the

Churchill firm on October 27, 2004.

13. This document is Plaintiff's reply addressing the disqualification of the Churchill

firm. Plaintiff incorporates by reference her arguments addressed in her Motion and

2

Memorandum to Disqualify Counsel, filed on June 4, 2004 and attached as Exhibit A to

Plaintiff's Appeal of the Magistrate's Order, pp. 4-6.

14. Plaintiff also incorporates her Reply in Support of Appeal of the Magistrate's Order

filed on August 30, 2004, in which Plaintiff notes that defendant has waived any contention not

raised before the Magistrate Judge. Defendant did not address the disqualification of the firm as a

result of the disqualification of counsel and thus has waived any argument that the firm not be

disqualified.

**Applicable Legal Principles On the Disqualification of A Testifying Attorney's Firm**

15. As plaintiff has addressed, the U.S. district court for the Northern District of Illinois

in *Jones v. City of Chicago*, 610 F. Supp. 350, 358-361 (N.D. Ill. 1984) has specifically

addressed the question of disqualification of a testifying attorney's firm. In the *Jones* case, the

district court concluded that the firm was required to be disqualified after considering the

applicable new and former disciplinary guidelines providing guidance on the issue.

Of note in *Jones* is the fact that it was a firm larger than the present firm and had more

attorneys than the instant firm. Thus, unlike in the instant case, the issues favoring

disqualification of the firm were not as pronounced as they are here where the sole attorney

remaining to try this case is the son of the testifying attorney, and it is the son that will have to be

bolstering the testifying attorney's–father's credibility–or addressing the father's credibility.

Indeed, in light of the deposition testimony of Daniel Churchill, his credibility is likely to play to

a central role in the trial of this case as the events surrounding Plaintiff's termination that he was

a witness to will be directly relevant on the issue of Mr. Goodrich's credibility and the

defendant's intent.

In *Jones*, the district court after considering the New Model Rules of Professional

Conduct concluded that it was not proper for the testifying attorney's firm to particulate as

advocates in the same lawsuit and disqualified the firm. 610 F. Supp. at 359. The court stated:

"Cases developed under the former Code and current commentary dealing with the issue of firm

disqualification convince this Court that the judicial process itself would be tainted by allowing

the testifying lawyer's firm to act as trial counsel under the circumstances of this case." *Id.*

The court went on to note that the same reasons which support disqualification of the

testifying attorney support disqualification of the testifying attorney's entire firm–to wit; that is:

courts have recognized that to the extent the client's case is proffered through the advocate-

attorney's partner or associate, the advocate partner must indelicately argue their partner's

credibility. *Id. citing MacArthur v. Bank of New York*, 524 F. Supp. 1205 (S.D.N.Y. 1981);

*Sheldon v. Blackhawk Heating & Plumbing*, 423 F. Supp. 486 (S.D.N.Y. 1976). The *Jones* court

also noted that the lawyer's credibility is still impaired since the opposing side can argue that the

testifying lawyer still maintains a stake in the litigation. *Id.; citations omitted.*

As the *Jones* court went on to note, cases where the courts have refused to extend

disqualification to an entire firm presented unique circumstances that were not present in the

*Jones* case and are not present here.  One was where the testifying attorney was no longer a

member of the firm representing one of the parties in the case. In another, the motion to

disqualify was filed 14 months after the complaint was filed.

The *Jones* court applied Disciplinary Rule 5-102(B) which involved circumstances such

as those presented here where the testifying attorney might be called as a witness other than on

behalf of his client and stated that a showing that the testifying lawyer's testimony may prejudice

his client. Where this is the case, the firm should be disqualified because it may not adequately

attack their partner's credibility. 610 F. Supp. at 360, n. 3.

 In the instant case, Plaintiff has noted that based upon the testimony of Mr. Goodrich at

the Unemployment Compensation Hearing and the position of the defendant as part of its

4

defense, attorney Daniel Churchill's deposition testimony appears to contradict the testimony of

Mr. Goodrich as to when Plaintiff was fired, and in fact whether she was fired, as Plaintiff

contends, or Plaintiff voluntarily resigned as defendant contends. Further, Churchill will be cross

examined concerning the events that transpired at the end of the day relating to Schultze's

packing up of her belongings. A review of the transcript of Churchill's deposition, attached to

defendant's Supplement in Resistance to Plaintiff's Pending Appeal, reveals that Churchill's

recollection as to certain key events is precise and as to others not as precise, facts which will

relate directly to Churchill's credibility and in fact potentially prejudice his client's case both as

to defendant's intent, the issue of pretext and its position as to the course of events.

In *Jones,* because the testifying attorney's testimony was relevant to central issues and

because his credibility would be important, the district court disqualified the testifying attorney's

firm finding that "As partners and associates, their efforts may be discounted by the trier, to the

detriment of their client's case." *Id.* at 360. Not only is the same reasoning applicable here, but

the circumstances of Mark Churchill, the son of the testifying attorney, arguing his father's

credibility to the jury favors even more disqualification of the firm of Churchill and Churchill.

And as the *Jones* court noted, the jury may discount Daniel Churchill's testimony even more

because he would share in the fees earned in the case. *Id.*

16. Defendant's argument that it the firm of Churchill and Churchill should not be

disqualified underscores the credibility issues at stake in this case. First, defendant argues that

telephone conversation on July 10 in which Daniel Churchill participated is irrelevant because

first, the pay discrimination claim occurred prior to that date and two, the alleged

discharge/dismissal "had already occurred prior to Daniel Churchill's involvement in the

telephone conversation . . . ." Def's Br. At 7. In fact, however, this argument underscores the

prejudice at issue to having Daniel Churchill's son addressing his father's credibility. It is

5

Plaintiff's contention that in fact she was fired at the end of the day on July 10 and Daniel

Churchill's credibility as to what he does and does not recall as well as what he relates having

happened during this conversation at the end of the day is central to this issue. Defendant

Goodrich has contended that in fact Plaintiff voluntarily resigned earlier in the day. The

testimony of Daniel Churchill coupled with a credibility determination concerning his memory

and recitation of events will bear directly on the jury's determination as to whether first, Schultze

voluntarily resigned earlier in the day as Goodrich contends or fired at the end of the day on July

10 during the events that Daniel Churchill participated in as Plaintiff contends. In turn, the

answer to this question will impact on the jury's determination as to whether Plaintiff's discharge

was in retaliation for her questioning her pay inequity issues earlier in the day. Thus, defendant's

argument–that the conversation was completely useless–makes Plaintiff's point, Daniel

Churchill's credibility is at issue as to a central fact in Plaintiff's case. Having his son addressing

his credibility with a stake in the litigation and fees presents all of the issues addressed by the

district court in *Jones* favoring disqualification of the testifying attorney's firm. Defendant's

contention that Plaintiff's case will rise and fall on what occurred prior to the July 10 telephone

call involving Daniel Churchill is quite wrong for the reasons noted above (Def's Br. at 8).

Further, issues raised by defendant in what it has captioned "Counterclaims" will be directly

impacted by Daniel Churchill's testimony concerning the events at the time of this conversation,

assuming *arguendo* those claims remain at the time of trial.

Defendant recites various rules at issue in determining disqualification. All of these Rules

were considered by the *Jones* court along with case law addressing those rules. Defendant offers

no argument to counter the careful and thorough analysis of the *Jones* court as to how those rules

impact on the disqualification of the Churchill firm. Moreover, while Plaintiff does point this

court's attention to the *Jones* court, there are numerous other decisions cited by that Court and

Plaintiff coming to the same result: that the testifying attorney's firm must be disqualified where as here the credibility of that attorney is at stake, will be inquired into by the firm, the testifying attorney and the firm have a stake in fees to be paid by the client and, in this case, perhaps most compelling, the only other attorney in the firm is the testifying attorney's son.

Finally, defendant states that it has brought in counsel, Robert T. Parker, an attorney unaffiliated with the Churchill firm to assist in the trial of the case. It appears that Mr. Parker can therefore take over the representation of Goodrich while the Churchill firm is disqualified. Unfortunately, his presence as co-counsel if that is what the Churchill firm proposes, does not eliminate the prejudice to Goodrich, to wit: the Churchill firm retains a financial interest in the outcome of the litigation a fact that impact adversely on the jury's assessment of the credibility of Daniel Churchill the testifying attorney and in a way that prejudices their client.

WHEREFORE, for the foregoing reasons and the reasons set forth in Plaintiffs' Motion to Disqualify and Reply in Support, Plaintiff respectfully requests that this Court disqualify the firm of Churchill and Churchill in addition to Daniel Churchill.

RESPECTFULLY SUBMITTED,

TERESA SCHULTZE

BY: s/Susan Bogart
    Attorney for Plaintiff
    Law Offices of Susan Bogart
    30 North LaSalle Street, Suite 2900
    Chicago, IL 60602
    Telephone :(312) 263-0900, ext. 7014
    Fax: (312) 263-5013
    Email: SBogart514@aol.com