E-FILED
Tuesday, 30 November, 2004   10:52:40 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TERESA SCHULTZE, | ) |
| Plaintiff, | ) |
| v. | ) Case No.03-4089 |
| GOODRICH EQUIPMENT COMPANY | ) |
| Defendant. | ) |

## **O R D E R**

This matter is before the Court before the Court on Plaintiff's Appeal of the Magistrate's Order Denying Plaintiff's Motion to Disqualify Defense Counsel [#16] and Defendant's Motion to Strike Plaintiff's Motion to Disqualify [#21].  For the following reasons the Order of the Magistrate is REVERSED. Accordingly, Plaintiff's Motion to Disqualify [#16] is GRANTED and Defendant's Motion to Strike [#21] is DENIED.[1]

### BACKGROUND

Plaintiff Teresa Schultze filed this sex discrimination suit against her former employer, Defendant Goodrich Equipment Company in December 2003.  In June 2004 Schultze filed a Motion to Disqualify Goodrich's counsel, Daniel Churchill.  The basis of Schultze's Motion was that counsel for the Plaintiff, Daniel Churchill, was present, by way of telephone, at the time Schultze claims she was fired.  Although Daniel Churchill admits

---

[1] Defendant's Motion to Strike is primarily based on Defendant's contention that Plaintiff's filed their appeal of the Magistrate's Order out of time. However, the Defendant miscalculates the time allowed under Federal Rule of Civil Procedure 6(a).  Under that Rule, Plaintiff's filed their appeal on time.  The remainder of Defendant's Motion to Strike is more accurately construed as a Response to Plaintiff's Appeal of the Magistrate's Order, and is viewed as such.

to being telephonically present during the final hours of Schultze's employ, he denies he will have anything relevant to say if Schultze's calls him to testify.

The Honorable John Gorman determined in his Order denying Schultze's motion, that Daniel Churchill would not be a necessary witness for either side, and therefore disqualification was not warranted. Schultze appealed the determination. This Court, in a status hearing on the matter, ordered Schultze's attorney, Susan Bogart, to determine whether she planned on calling Daniel Churchill at trial. After taking Daniel Churchill's deposition, Bogart determined that "Daniel Churchill will at this time be listed as a witness in Plaintiff's case." The Court then stated that Daniel Churchill would not be allowed to participate as counsel at trial. The Court ordered further briefing on the question of whether Daniel Churchill's firm, Churchill & Churchill P.C., and its sole other member, Mark Churchill (Daniel Churchill's son) would be able to participate as counsel for Goodrich. That briefing was completed November 5, 2004, and this Order follows.

## DISCUSSION

A Magistrate's order is reviewable by the district court to determine if it is clearly erroneous or contrary to law. Fed. Rule of Civ. Proc. 72(a). The District Court for the Central District of Illinois has adopted as its own the Illinois Rules of Professional Conduct. CDIL - LR 83.6(D). The applicable ethical rule in this case is Rule 3.7 — *Lawyer as Witness*. The Court will first address whether it is appropriate for Daniel Churchill to continue representing Goodrich at all, and then, whether his son, Mark Churchill can continue his representation.

### I. Daniel Churchill

Long before the Model Rules of Professional Conduct were enacted it was the

practice of courts in Illinois to bar an attorney from playing the role of both advocate and witness in the same proceeding. *See, e.g.*, In re Obartuch, 54 N.E.2d 470, 474 (Ill. 1944), ("The practice of appearing in such a dual capacity has been condemned in this court in many cases ...."). The rule furthers several important policies. Allowing an attorney to play the duel role of advocate and witness leaves the attorney with a monetary incentive to be less than truthful on the witness stand, or at least gives the trier of fact reason to harbor that impression. Jones v. City of Chicago, 610 F. Supp 350, 357 (N.D. Ill. 1984). The jury might also grant undue weight to the attorney's testimony and confuse the roles of the attorney as witness and attorney as advocate. Id. Lastly, "the rule reflects the broader concern for public confidence in the administration of justice, that 'justice must satisfy the appearance of justice.'" Id. (quoting United Sates v. Johnson, 690 F.2d 638 (7th Cir. 1982)). For these reasons, and these reasons alone, this Court will not allow Daniel Churchill to serve as an advocate in this case.

The Illinois Rules of Professional Conduct, which this Court has adopted in its Local Rules, provide an alternative basis for this ruling. Rule 3.7 applies when a lawyer might act as both a lawyer and witness. Subsection (a) has no application to these facts. It states:

> (a) A lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness *on behalf of the client*, except that the lawyer may undertake the employment and may testify:
>> (1) if the testimony will relate to an uncontested matter;
>> (2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;
>> (3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or

> (4) as to any other matter, if refusal to accept or continue the employment would work a substantial hardship on the client

Ill. Rule of Prof. Conduct 3.7(a) (emphasis added). By its plain language, this rule would only apply here if the Defendant and its attorney, Daniel Churchill, not the Plaintiff and her attorney, believed that Daniel Churchill should testify for the Defendant. However, Daniel Churchill has made it abundantly clear — in his signed pleadings, deposition, sworn affidavit, and direct statements to the Court — that he has no intention of calling himself as a witness. Therefore, 3.7(a) is does not apply here.

Rule 3.7(b) on the other hand is directly applicable these facts. It states:

> (b) If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may accept or continue the representation until the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

Under our facts, Daniel Churchill has every reason to suspect that "may be called as a witness other than on behalf of his client" because the Plaintiff — in her signed pleadings and direct statements to the Court — has said that she will probably call him. Further, because Daniel Churchill was a witness to an episode that raises a serious dispute of material fact in this case — whether the Plaintiff was fired or quit — it is clear that Daniel Churchill's testimony might be relevant to resolve the dispute, and that he might therefore be called as a witness.

So, since Daniel Churchill knows he may be called as a witness, he cannot continue to represent Goodrich under the applicable ethical rules if he knows his testimony will be or *may be* prejudicial to Goodrich. In the course of this appeal, the Plaintiff took Goodrich's deposition. It is clear to the Court after reviewing that deposition that Daniel

Churchill's testimony may be prejudicial to Goodrich. For example, in his deposition Daniel Churchill said that he told the Plaintiff, during the course of his telephonic interaction with her, that "she could take her personal effects, nothing more, but she needed to do that, leave the premises promptly with no further exchange of communication and get out of the building." Indeed, Daniel Churchill warned the Plaintiff "to either follow directions or we'll call the sheriff or the law to assist us." Although a reasonable jury could view this direction as consistent with the Defendant's version of events — that the Plaintiff resigned — the jury might find it more consistent with the Plaintiff's version — that she was fired. If the fact finder chooses the latter, Daniel Churchill's testimony will clearly prejudice his client. Thus, because he is likely to be called as a witness and his testimony may prejudice his client, Daniel Churchill cannot continue to represent Goodrich consistent with Rule 3.7(b).

The Court recognizes disqualification can be a harsh sanction. *See* Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) ("[D]isqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'") (quoting Schiessle v. Stephens, 717 F.2d 417, 419-20 (7th Cir.1983) . However, where it is clear, as it is here, that an attorney might be called as a witness against his client, and that the attorney's testimony might harm the client, the language of Rule 3.7(b) is mandatory.

Finally, the Court must address whether Daniel Churchill is barred from acting as counsel in all matters in this case or simply as trial counsel. Rule 3.7(b) does not distinguish between trial and pretrial representation, but prohibits a lawyer from continuing representation once the lawyer is aware that he might be testifying and his testimony might be prejudicial to the client. *See* Rule 3.7(b). Accordingly, Daniel Churchill is prohibited from any further representation of Goodrich in this matter.

## II.    Mark Churchill

The second question is whether Mark Churchill, Daniel's son and the only other member of Churchill & Churchill P.C., must be barred from representing Goodrich because Daniel Churchill is so barred.  The Plaintiff's rely primarily on Jones to argue that Mark Churchill should be disqualified in this case.  However, the Court in Jones focused on cases under the old ABA Code of Professional Responsibility, which *required* disqualification of an attorney's entire firm when an attorney from the firm was disqualified.  Id. at 359 ("Cases developed under *the former Code* and current commentary dealing with the issue of firm disqualification convince this Court that the judicial process itself would be tainted by allowing the testifying lawyers firm to act as trial counsel under the circumstances of this case.") (emphasis added).  Further, the court stated that "ethical rules for attorneys developed by the ABA need not be literally applied by federal courts in every case." Id. (citing J.P. Foley & Co. v. Vanderbilt, 523 F.2d 1357 (2d Cir. 1975).  However, as noted above, this Court applies the ethical rules of the Illinois Supreme Court, which has adopted the ABA Model Rules of Professional Conduct applicable to this case, and does so literally.  Thus, the analysis of Jones relating to firm disqualification is not very helpful here.

Rule 3.7(c) provides the general rule to apply when deciding whether to disqualify an entire firm when a member of that firm is disqualified.  It states:

> (c) Except as prohibited by Rule 1.7 or Rule 1.9, a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm may be called as a witness.

Rule 1.9 concerns conflicts of interest created by former clients and has no application under these facts.  Rule 1.7 is the general rule for when a conflict of interest between an attorney and client creates an ethical barrier to representation.  Only subsection (b) is

relevant under our facts. It states:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after disclosure.

In this instance, the potential conflict of interest lies in that Mark Churchill has a duty to Goodrich to provide zealous representation, but might also be influenced at by his fidelity to, and financial ties with, his father and partner, Daniel Churchill. The Court recognizes that these are some of the same concerns raised in the analysis above concerning whether to disqualify Daniel Churchill. That is, Mark Churchill will be in the awkward position of arguing for his partner, and this case, his father's credibility, and Daniel Churchill will maintain a financial stake in the outcome of the litigation. However, these are all points that the Plaintiff is permitted to, and surely will, bring out in her examination of Daniel Churchill. This measure of protection is sufficient under the rule, for allowing Daniel Churchill to continue representation does not pose a threat to appearance of justice that is posed by allowing a lawyer to serve as advocate and witness in the same case. Indeed, it was this distinction that likely prompted a change in the Model Rules that allows a firm to continue representation after an attorney from that firm has been disqualified.

Furthermore, Goodrich is offered the escape hatch of consent: if Goodrich believes that he might receive better representation from another firm — a firm that doesn't have this same potential conflict — Goodrich can refuse to consent and employ new counsel. It is Goodrich's and not the Plaintiff's interests that are potentially harmed by allowing Mark Churchill to continue representing Goodrich. Thus, it is for Goodrich to determine whether

he prefers to continue with Mark Churchill's representation despite the potential conflict under Rule 1.7.

In conclusion the Court notes to Mark Churchill, if it is not already clear, that Rules 3.7 and 1.7 *require* him to obtain Goodrich's consent to remain as counsel for Goodrich. Although the Rules do not require that consent to be in writing, that protective measure is always suggested.

## CONCLUSION

For the reasons stated above, the Order of the Magistrate denying Plaintiff's Motion to Disqualify [#12] is REVERSED, Plaintiff's Motion to Disqualify Counsel [#16] is GRANTED, and Defendant's Motion to Strike Plaintiff's Appeal [#21] is DENIED.

ENTERED this 29th day of November, 2004.

/s Michael M. Mihm
Michael M. Mihm
United States District Judge