**E-FILED**
Friday, 26 August, 2005  04:41:40 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| TERESA SCHULTZE, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 03 C 04089 |
| vs. | ) |
| | ) **ORAL ARGUMENT REQUESTED** |
| GOODRICH EQUIPMENT CO., | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant, GOODRICH EQUIPMENT CO., by its attorneys, Mark D. Churchill for Churchill & Churchill P.C., and Robert T. Park for Snyder, Park & Nelson, P.C., and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for its Motion for Summary Judgment states as follows:

### INTRODUCTION

Plaintiff initiated this matter by filing her Complaint on December 24, 2003, alleging that Defendant engaged in sex discrimination and illegal retaliation. She specifically asserted that she was paid less than her similarly-situated male coworkers and that she was fired when she protested this gender-based inequality. The Defendant now seeks summary judgment because there are no genuine issues of material fact in this matter, and the undisputed evidence shows the Defendant is entitled to judgment as a matter of law.

- 2-

I.  *Gender Discrimination*:

Lacking any direct evidence of gender discrimination on which to base her claim, Plaintiff by law must prove that she was treated less favorably than similarly-situated male employ-ees.  Plaintiff's employment position at Goodrich Equipment Co. as the sole Service Manager precludes her from establishing a *prima facie* case of gender discrimination.  There simply are no similarly-situated positions with which a comparison can be made.

The Plaintiff was employed by the Defendant as its Service Manager from November of 2002 until July 10, 2003.  The Service Manager position at Goodrich Equipment Co. is wholly unique from all other positions in its responsibilities, scope, time re-quirements, customer interaction and supervisory obligations. The Defendant employs only one Service Manager, who alone is charged with scheduling and generally overseeing the work per-formed by the service department, including items such as war-ranty work, equipment repairs and new product assembly.

Conversely, the Defendant employs three sales managers, who are responsible exclusively for the sale of parts and equipment. Plaintiff was responsible for the general supervision of two foremen and twelve technicians, while each sales manager over-

– 3–

sees one to three individuals.  It is impossible for Plaintiff to prove gender discrimination in this matter when similarly-situated positions do not exist with which comparisons can be made.

Because of the absence of similarly-situated employees at the time she was employed, if the Plaintiff were to make any salary comparisons, the only potentially available comparable employees would be those who directly preceded and succeeded her in the Service Manager position.  Any such comparison completely destroys Plaintiff's claim, as the male individuals who preceded and succeeded the Plaintiff in her position had far more in the way of both experience and qualifications, yet their compensation directly paralleled that of the Plaintiff.

At the time the Defendant hired her, the Plaintiff possessed no previous service manager experience and had never worked in an agricultural implement and parts dealership.  The Plaintiff's starting annual salary in November of 2002 was $35,000.00, and when her employment was terminated a mere eight months later, she was earning $42,000.00 annually. Conversely, Klint Rice, the individual who directly preceded the Plaintiff as Service Manager, had over three years of experience as Service Manager for the Defendant and was earning an annual salary

- 4-

of $41,366.57 at the time Plaintiff was hired. Larry Bitter, who immediately followed the Plaintiff's employment, had fifteen years of experience as a service manager and was hired in August of 2003 by Goodrich Equipment Co. at a starting annual salary of $39,000.00.

## II.  *Retaliation*:

To establish a *prima facie* retaliation claim, Plaintiff must prove that the Defendant took some employment action against her because she engaged in statutorily-protected expression.  On a number of occasions, Plaintiff told her supervisor that she was displeased with her salary.  However, in each discussion that occurred, Plaintiff's sole arguments for higher pay were that she was not being paid what she had been promised when she was first hired and that she was not being paid as much as some of the technicians whom she supervised, a situation she found to be unethical.  At no time did Plaintiff declare that her unhappiness with her pay had anything to do with her gender or the gender of her co-workers.

This motion relies upon the legal premise that Plaintiff's pay complaints can in no manner be construed as statutorily-protected speech.  Plaintiff's objection that she was not being paid what she had been promised at the time she was hired is a

– 5–

contractual issue, and does not constitute protected speech. Likewise, whether the Plaintiff found it unethical to be paid less than the highly skilled service technicians whom she indirectly supervised, her expressions of her opinions on ethics were not protected speech.

Plaintiff's retaliation claim fails as a matter of law because it lacks any evidence of statutorily-protected speech. Under the legal precedent on which Defendant relies, it is not possible for an employer to retaliate if it is not aware of any complaint of unlawful discrimination. Plaintiff at no time stated that either her gender or the gender of her peers was at issue when discussing her discontentment with her pay level, thereby eliminating any possibility that Defendant improperly retaliated against her.

No genuine issues of material fact exist in this matter and all of the evidence, when viewed in the light most favorable to the Plaintiff, illustrates that Plaintiff's allegations of gender discrimination and retaliation are baseless. The Defendant seeks summary judgment as to all aspects of Plaintiff's Complaint.

– 6–

## UNDISPUTED MATERIAL FACTS

1. That Defendant, Goodrich Equipment Co. Inc., is a John Deere parts and equipment dealer. (Affidavit of Roger Goodrich, Paragraph 2, Exhibit A hereto.)

2. That Plaintiff was employed as Service Manager at Goodrich Equipment from November 2002 until July 10, 2003. (Plaintiff's Answer to Defendant's Interrogatory No. 3, Exhibit B hereto.)

3. That Plaintiff was a salaried employee. (Deposition of Teresa Schultze, page 38, Exhibit C hereto.)

4. That Plaintiff's starting salary was $35,000.00 (Plaintiff's Answer to Defendant's Interrogatory No. 6, Exhibit D hereto.)

5. That Plaintiff received a raise in May of 2003. (Plaintiff's Answer to Defendant's Interrogatory No. 6, Exhibit D hereto.)

6. That Plaintiff's salary on her final date of employment was $42,000. (Affidavit of Bill Schneider, Paragraph 4, Exhibit E hereto.)

7. That only one Service Manager employment position existed at Goodrich Equipment during the time of Plaintiff's em-

- 7-

ployment. (Affidavit of Roger Goodrich, paragraph 8, Exhibit A hereto.)

8.  That the Service Manager preceding Plaintiff was Klint Rice. (Plaintiff's Answer to Defendant's Interrogatory No. 3, Exhibit B hereto.)

9.  That Mr. Rice had been employed as Defendant's Service Manager for over three years and was earning an annual salary of $41,366.57 at the time Plaintiff assumed the Service Manager position. (Affidavit of William Schneider, paragraph 6, Exhibit E hereto.)

10.  That the Service Manager directly following Plaintiff's employment was and continues to be Larry Bitter. (Affidavit of William Schneider, paragraph 7, Exhibit E hereto.)

11.  That Mr. Bitter's salary in August of 2003 was $39,000.00. (Affidavit of William Schneider, paragraph 8, Exhibit E hereto.)

12.  That Roger Goodrich was the Plaintiff's supervisor at all times during her employment.  (Affidavit of Roger Goodrich, paragraph 6, Exhibit A hereto; Plaintiff's Answer to Interrogatory No. 3, Exhibit B hereto.)

13.  That Plaintiff discussed her displeasure concerning her amount of compensation verbally to Roger Goodrich on more

– 8–

than one occasion and in written correspondence dated June 2, 2003. (Affidavit of Roger Goodrich, paragraphs 10, 14, Exhibit A hereto.)

14.    That at no time during her employment at Goodrich Equipment Co. did Plaintiff file or threaten to file any complaint of sex or gender discrimination. (Affidavit of Roger Goodrich, paragraph 13, Exhibit A hereto.)

## ARGUMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party. Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 527 (7th Cir. 2003).

I.    *Gender Discrimination*:

Plaintiff's Complaint contains two allegations, the first being that she was discriminated against on the basis of her gender by being paid less than her similarly situated male co-

- 9-

workers in violation of Title VII of the Civil Rights Act of 1964. (Plaintiff's Complaint – paragraphs 1, 2 and 11).  Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compen-sation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex..." 42 U.S.C. §2000e-2(a)(1).

### *Absence of similarly-situated male employees prohibits Plaintiff from presenting a* **prima facie** *case of gender discrimination.*

A plaintiff who is alleging discrimination under Title VII must establish that discrimination either by presenting direct evidence or by using circumstantial evidence under the McDonnell Douglas method.  Plaintiff, in her Complaint, deposition testi-mony and Interrogatory responses, has made no mention of direct evidence of discrimination existing in this matter. Plaintiff therefore must base her entire argument solely upon circumstan-tial evidence.

In order to succeed on a gender discrimination claim based solely on circumstantial evidence a plaintiff must, "first raise an inference of discrimination by demonstrating that:  (1) he belongs to a protected class; (2) his performance met his em-

- 10-

ployer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated others not in his protected class received more favorable treatment." Brummett v. Sinclair Broadcast Group, Incorporated, 414 F. 3d 686, 692 (7th Cir. 2005).

"If the plaintiff meets her burden, a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action. Should the employer meet its burden, the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination. The ultimate burden of persuasion remains at all times with the Plaintiff." Moser v. Indiana Dept. of Corrections, 406 F. 3d 895, 900-901 (7th Cir. 2005) citing Stockett v. Muncie Indiana Transit Sys., 221 F. 3d 997, 1001 (7th Cir. 2000).

"To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects...A court must look at all relevant factors, the number of which depends on the context of the case. Such factors include whether the employees dealt with the same supervisor and were subject to the same standards.  It is also relevant whether

- 11-

the employees had comparable experience, education and qualifi-
cations." <u>Patterson v. Avery Dennison Corporation,</u> 281 F. 3d
676, 680 (7th Cir. 2002), citing <u>Radue v. Kimberly-Clark Corp.,</u>
219 F. 3d 612, 617-618 (7th Cir. 2000).

Plaintiff, in her answers to Defendant's Interrogatories,
listed individuals whose positions at Goodrich Equipment she ar-
guably feels are directly comparable in all material aspects to
that of the Service Manager. In her answer to Defendant's Inter-
rogatory #7 asking which employees at Goodrich Equipment Plain-
tiff considered to be "similarly-situated," Plaintiff stated
that: "Klint Rice was similarly situated in that he performed
Plaintiff's position prior to Plaintiff; and, in addition, Don
McDonald and Denny DeSplinter were the other managers at Good-
rich and Mike DeRew,...and Roger Goodrich who performed manager-
ially duties. Presently, Larry Bitter is similarly situated to
Plaintiff in that he is performing managerially duties as Ser-
vice Manager." (Excerpt from Plaintiff's Answer to Defendant's
Interrogatory #7, attached as Exhibit F)

The Defendant will address the nature and responsibilities
of the job of each of these individuals compared to those of the
Plaintiff's job to illustrate that the uniqueness of the Service
Manager position at Goodrich Equipment Co. eliminates the possi-

- 12-

bility of a comparison to any "similarly-situated employee."
Without such a comparison upon which to base her argument, the
Plaintiff is unable to establish discrimination.

<u>Service Manager</u>:

The Service Manager position at Goodrich Equipment Co., as
described by witnesses in this matter, will never be mistaken
for an easy employment position.  Only one service department
exists and only one position exists to manage that service de-
partment (Goodrich Affidavit, paragraph 8), and the responsi-
bilities of that position are unique from any other.

The testimony of the Plaintiff and Klint Rice in describing
the position illustrate this fact.  Plaintiff testified that:

> "I was basically responsible for all aspects of the
> business related to service at the dealership includ-
> ing everything from scheduling work, consulting with
> the sales staff, the managers, resolving discrepancies
> with the customers, with bills, with John Deere per-
> sonnel, area managers, employee development, budget,
> monthly reports, billing, to some extent training.  I
> was also tasked, after a time, to communicate when we
> received new equipment, was tasked with starting a de-
> velopment of an OSHA awareness program with the em-
> ployees, equipment files, inventory, warranty, parts –
> used and new parts, pretty much all aspects of the
> business."  (Schultze deposition, page 46 line 21 –
> page 47 line 14, Exhibit C hereto.)

It was Klint Rice's testimony that, "the biggest thing with
this job is experience and time.  Time is the key to this posi-

- 13-

tion.  Being there, being involved, and being on the floor.

That's, that's the key." (Rice deposition, page 121 lines 8-12,

Exhibit G hereto.)  When questioned further about the service

manager position Mr. Rice testified:

> **"Q:  And I suppose that means that you have to know**
> **not just the   equipment issues, right?**
> A:   Uh-huh.
>
> **Q:   That's a yes?**
> A:   Yes. Yes.
>
> **Q:   The types of parts, right?**
> A:   Somewhat, yes.
>
> **Q:   Okay. And the ins and outs of the service?**
> A:   Yes.
>
> **Q:   What's being performed?**
> A:   Yes.
>
> **Q:   So you can describe it?**
> A:   Yes.
>
> **Q:   Okay.  Anything else, because you say it's the**
> **hub, that you can --?**
> A:   All billing runs through there; all time posting
> runs through there; your responsible for 15 techs;
> your responsible for $50,000 a month in supplies.
> It's a big time job.
>
> **Q:   Okay.**
> A:   And you've got to be there to do it.
>
> **Q:   And any other job that you think compares at**
> **Goodrich Equipment Company?**
> A:   No.
>
> **Q:  All right.  So you think it's the most compli-**
> **cated job?**

- 14-

        A:    It is the most complicated job in the building."
        (Rice dep., page 124 line 19 – page 126 line 1, Ex-
        hibit G hereto.)

Teresa Schultze:

        The Plaintiff was employed as Service manager for Goodrich

Equipment Co. from November of 2002 until July 10, 2003.  Her

annual salary in November of 2002 was $35,000 (Schultz dep.,

page 67 lines 22-25, Exhibit C hereto), and her annual salary on

July 10, 2003 was $42,000.00. (Schneider affidavit, schedule 1,

Exhibit E hereto.)  Plaintiff's Complaint, her deposition testi-

mony and her Answers to Interrogatories are void of any evidence

that she had prior experience as a Service Manager.

Klint Rice:

        Klint Rice holds a bachelor's degree in agricultural sci-

ence from Western Illinois University (Rice deposition, page 4,

lines 20-23, Exhibit G hereto), and has been employed by Good-

rich Equipment a total of nearly six years, with over three of

those in the position of Service manager.  In July of 2000 Mr.

Rice possessed over one year of experience as the Defendant's

Service Manager and was earning an annual salary of $38,000.

(Rice deposition, page 23, lines 7-18, Exhibit G hereto.)  At

the time Mr. Rice concluded his tenure as Service Manager in No-

- 15-

vember of 2002 he was earning an annual salary of $41,366.57.
(Schneider affidavit, paragraph 6, Exhibit E hereto.)

Don McDonald:

Donald McDonald has been employed by Goodrich Equipment Co.
since February of 1988 and is presently the parts department
manager and supervises three employees.  This is the identical
position he held during the entirety of Plaintiff's employment
and in 2003 earned an annual salary of $46,723. (Exhibit 4 to
Schneider affidavit, Exhibit E hereto.)

Dennis DeSplinter:

Dennis DeSplinter has over twenty years of employment with
Goodrich Equipment Co. and is presently employed as the agricul-
tural sales manager and supervises two employees.  This is the
identical position he held during the entirety of Plaintiff's
employment and in 2003 earned an annual salary of $52,304.00.
(Exhibit 4 to Schneider affidavit, Exhibit E hereto.)

Mike DeRew:

Michael DeRew possess an associate's degree in farm machin-
ery technology (DeRew deposition, page 10, line 6, copy attached
and marked Exhibit H), and has been employed by Goodrich Equip-
ment Co. since 1977.  Mr. DeRew is currently employed as the
tractor shop foreman, the identical position he held during the

- 16-

entirety of Plaintiff's employment and in 2003 earned an annual salary of 50,214.16. (Exhibit 4 to Schneider affidavit, Exhibit E hereto.)

Larry Bitter:

Larry Bitter succeeded the Plaintiff in the Service Manager position after holding the position of service scheduling manager at Consolidated Diesel. (Goodrich dep., page 57-59, Exhibit I hereto.).  Mr. Bitter in 2003 earned an annual salary of $39,000. (Schneider affidavit, paragraph 8)

Roger Goodrich:

Roger Goodrich is a minority shareholder of Goodrich Equipment Co. and has over twenty years employment with the company where he presently holds the position of General Manager and Vice President, the identical positions he held during Plaintiff's entire employment.  (Goodrich affidavit paragraphs 1 and 2, Exhibit A hereto; Goodrich dep., page 5, lines 1-6, Exhibit I hereto.)  Mr. Goodrich was the Plaintiff's direct supervisor the entire time she was employed and earned an annual salary of $62,400.00 in 2003. (Goodrich affidavit, paragraph 6, Exhibit A hereto; Exhibit 4 to Schneider affidavit, Exhibit E hereto.)

To be similarly-situated for Title VII comparison purposes, the job of plaintiff's co-worker must have been "directly compa-

- 17-

rable to her in all material aspects." <u>Patterson</u>, supra; <u>Radue,</u>
supra.  Under this definition, when the experience, years of em-
ployment and expertise of the individuals identified by Plain-
tiff as being "similarly-situated" are compared to that of the
Plaintiff it is irrefutable that there were no similarly-
situated employees at Goodrich Equipment Co.

When looked at in a light most favorable to the Plaintiff,
it is clear that, due to the unique nature of the Service Man-
ager position, and the lack of any employees with comparable ex-
perience, education and qualifications it is impossible for
Plaintiff to indirectly prove discrimination in pay based on
circumstantial evidence.

**II.  *Retaliation*:**

Plaintiff also alleges in her Complaint that she was dis-
charged as a result of complaints that her pay was less than
similarly-situated male co-workers.  Under the standards estab-
lished by the Seventh Circuit in <u>Stone v. City of Indianapolis,</u>
281 F. 3d 640 (7th Cir. 2002).  Plaintiff can establish a *prima*
*facie* case using either the direct method or the indirect
method.

Under the direct method, a plaintiff must present direct
evidence of (1) a statutorily protected activity; (2) an adverse

- 18-

action taken by the employer; and (3) a causal connection be-
tween the two. Stone, supra.

Under the indirect method, a plaintiff must show that
(1) she engaged in a statutorily protected activity; (2) she
performed her job according to her employer's legitimate expec-
tations; (3) despite her satisfactory job performance, she suf-
fered an adverse action from the employer; and (4) she was
treated less favorably than similarly situated employees who did
not engage in statutorily protected activity. Stone, supra.

> **_Lack of evidence to show that the Plaintiff en-_**
> **_gaged in statutorily-protected expression is a_**
> **_complete bar to recovery under a retaliation_**
> **_claim._**

Regardless of whether Plaintiff utilizes the direct or in-
direct method in this matter, in order to prevail on her re-
taliation claim, she must first prove that she did in fact en-
gage in conduct of a nature construed as statutorily-protected.
"Although an employee need not use the magic words "sex" or
"gender discrimination" to bring her speech within Title VII's
retaliation protections, she has to at least say something to
indicate her [gender] is an issue." Sitar v. Indiana Dept. of
Transportation, 344 F. 3d 720,727 (7th Cir. 2003) "An employee
can honestly believe she is the object of discrimination, but if

- 19-

she never mentions it, a claim of retaliation is not implicated,
for an employer cannot retaliate when it is unaware of any com-
plaints." <u>Miller v. American Family Mutual Insurance Company</u>,
203 F. 3d 997, 1008; 7th Cir. 2000.

Plaintiff addressed her displeasure with her level of pay
with her supervisor, Roger Goodrich, on a number of occasions,
including in written correspondence on June 2, 2003. (Paragraphs
10 through 14 and Exhibit 1 to Goodrich Affidavit, Exhibit A
hereto.) At no time in these discussions did the Plaintiff state
that her gender was an issue with regard to her compensation.
(Paragraph 12, Goodrich affidavit, Exhibit A hereto.)  Instead,
Plaintiff consistently made two other, unrelated arguments: (a)
that she had been promised a $7,000 raise after 60 days of em-
ployment but had not received it; and (b) that she felt it was
unethical for her to be paid less than some individuals whom she
supervised. (Paragraph 12 and Exhibit 1 to Goodrich affidavit,
Exhibit A hereto.)

In testimony taken under oath at her deposition, Plaintiff
was asked repeatedly about her discussions with Roger Goodrich
regarding her compensation and Plaintiff at no point testified
that her gender was ever an issue with regard to her salary.
Plaintiff's sworn testimony is irrefutable in showing that her

- 20-

only issues with regard to her compensation were that she was
not getting paid what she had been promised and that she was
getting paid less than those she supervised.  The evidence does
not allow for any other reasonable interpretation.

> **"Q:  Was there any discussion at that time regarding
> pay?**
> A:    Yes.  As a matter of fact, I went back and met
> with them because I had some concerns with school and
> home situations, and they wanted me to start immedi-
> ately. And we negotiated me to start part-time for the
> month of November and then full-time in December, and
> that given the transition period, my pay would be
> equal to that of Klint Rice's, which was the previous
> service manager position, after 60 days." (Page 37,
> lines 13-24, Schultze dep., Exhibit C hereto.)

> **"Q:  So what was the 60 – after 60 days, what was sup-
> posed to happen?  60 days from when?**
> A:    My pay was to be increased comparable to that of
> what Klint was receiving as a service manager." (Page
> 39, lines 4-8, Schultze dep., Exhibit C hereto.)

> **"Q: Okay. With regard to let's go back for a minute
> with regard to your pay.  When you went to work, it
> was your understanding that you would automatically
> get a $7,000 raise from $35,000 to $42,000 after 60
> days?**
> A:    Correct."  (Page 44, lines 20-25, Schultze dep.,
> Exhibit C hereto.)

> **"Q: And that was never put in terms of depending on
> how you worked out or anything like that?**
> A:    No. That was the whole aspect of me spending some
> part-time with Klint in the service manager position
> to get a feel for what actually took place throughout
> the day in the life of the service manager."  (Page
> 45, lines 1-8, Schultze dep., Exhibit C hereto.)

- 21-

"Q:  Okay. Did you have any meetings with Roger Good-
rich after you began work where you discussed salary
with him before May 6th 2003?
A:   Yes.

Q:   All right.  On how many occasions?
A:   Several.  As I mentioned, I recall the meeting
before I started employment with Goodrich.  I recall
discussing it briefly the first day of my part-time
employment with – when Goodrich asked me to lunch when
we went locally there where we also discussed vacation
and after the 60 day time frame, which would have been
approximately January, and periodically thereafter.

Q:   Why don't we talk about January, then, the first
time you discussed it with him after you had been
there 60 days?  Is that – was that in January?
A:   Yeah – well, the end of January would have been
the end of the 60 days of full-time employment.  And I
had approached Mr. Goodrich and asked him, you know,
for feedback on how he felt I was doing as a service
manager, any areas – specific areas that needed to be
addressed, feedback.  So my thought was if there some-
thing wrong, I needed to be aware of it.  Nothing was
brought to my attention.  Several other times after
that, when the discussion was brought up, it may have
been an inconvenient time for him or he was going to
be gone or he said he would look into it, but nothing
transpired from that point on.

Q:   The first time you spoke to him about the salary
question in January, this is the first time that you
made some complaint or had some questions about why
you weren't getting paid more?
A:   My question at the time was to get his feedback
on how I was doing in the position of service manager.
I wanted to make sure I was covering all the bases and
adequately performing the duties and responsibilities
of the position.  I didn't receive any negative feed-
back.  That was in lieu of anticipating the pay raise.
When it didn't happen after 60 days, I did bring it to
his attention.  You know, I was under the understand-
ing, according to our discussion, that after 60 days –

- 22-

his reasoning at the time or his explanation to me at
the time was 60 days would allow enough time for busi-
ness transactions to process through the system after
Klint Rice left the position, and there would basi-
cally be no carryover from Klint.  It would all be a
direct result of my managing the service aspect of the
business.

**Q:    So you asked him why you weren't being paid more?**
A:    Why I had not received the raise I had been prom-
ised.  (Page 78, lines 19 - page 81, line 3; Schultze
dep., Exhibit C hereto.)

**Q:    What were you discussion in your later – what
were your later discussions with him where you pursued
it further?**
A:    The later discussions included, again, soliciting
feedback.  I thought maybe there was a reason – a vi-
able reason why I hadn't received the promised pay
raise.  I thought I deserved an explanation."  (Page
81, lines 13-20, Schultze dep., Exhibit C hereto.)

**"Q:  And his feedback – or his comments to your ques-
tions about pay were simply that he would look into it
or he would talk about it later?**
A:    Yeah, I think – I feel that, in retrospect, that
I was put off for several months until I really made a
sincere effort to pin him down and say, you know, is
there something I'm not doing?  You know, do I get a
review, a quarterly review? I need to have something
to compare it to or some reason explained to me, you
know, what's holding it up. And eventually, as I re-
call, it transpired where when I did pin him down, we
did the review and we discussed the pay increase."
(Page 83, lines 4-18, Schultze dep., Exhibit C
hereto.)

**"Q:  Okay.  Showing you Roger Goodrich Exhibit No. 6,
is that the e-mail that you sent?**
A:    Yes, on June 2nd, 2003, where I did refer to the
$42,000 level we had discussed and had discussed sev-
eral times over the preceding months and had also put
a copy of the organizational chart, as it was at that

- 23-

time, in here and brought to his attention, as I men-
tioned, after discussions and the successes that we
had accomplished in the service department over those
months, that I would have received the salary increase
as promised when I was hired as the service manager.

**Q:  Okay.**
A:   So as I said, this had gone for several months."
(Page 84, lines 11-25, Schultze dep., Exhibit C
hereto.)

**"Q:  Was that – is that all you recall at this time of
the meeting that occurred about 9:07 on July 10th?**
A:   No, I recall again asking him about the promised
pay raise that he had indicated when he hired me be-
cause it had still not been resolved at that point.

**Q:  And what did he say to that?  So he's complaining
that you are taking advantage, and then you said, What
about my pay raise?**
A:   Yeah, that's not exactly how it transpired.  When
he started the conversation and made the comments, I
asked for any evidence or a time and attendance record
to see so I could validate what he may be referring to
or object to what he may be referring to.  As I men-
tioned, he said he didn't have to give me jack shit.
I thought also this was an opportunity for me to raise
my question since I had him sitting down in the same
room.  (Page 99, lines 18-25; page 100, lines 1-3 and
7-18; Schultze dep., Exhibit C hereto.)

**Q:  Okay.  I'm just trying to get the sequence here.
After he had suggested that you resign, then you asked
him about your pay?**
A:   Yes, it was still an ongoing issue."  (Page  100,
lines 19-23, Schultze dep., Exhibit C hereto.)

Assertions made by Plaintiff in the form of correspondence

from Plaintiff to Roger Goodrich dated June 2, 2003, further ex-

emplify the fact that at no time was Plaintiff's gender an issue

- 24-

with regard to her compensation.  Plaintiff's own written corre-
spondence to her supervisor is void of any gender reference
whatsoever and instead contains the following language, "It is
not ethically a sound decision to compensate a manager less than
the technicians that work for that manager."  (Exhibit 1 to
Goodrich Affidavit, Exhibit A hereto.)  When questioned regard-
ing this correspondence in her deposition Plaintiff responded,
"I was making less than the shop foreman and other similarly
situated managers in the dealership." (Pg. 88 lines 23-25,
Schultze dep., Exhibit C hereto.)  She continued, "I felt it was
ethically and professionally not a sound decision to compensate
a manager less than..." (Pg 89, lines 3-5, Schultze dep., Ex-
hibit C hereto.)

      This evidence cannot be interpreted in any other manner
than to find that Plaintiff was dissatisfied with her salary be-
cause she felt she was promised a raise and that she was being
paid less than individuals whom she supervised.  Plaintiff's
correspondence and sworn testimony do not reference gender or
compensation discrimination based on sex but simply state her
policy view about compensation issues.

      Whether a raise was promised or not is immaterial to this
retaliation claim, as making complaints about an alleged oral

- 25-

contractual promise can never be construed as being anything but a contract matter and certainly not statutorily-protected speech.  Likewise, if there were something illegal about an employee supervising more highly paid workers, the courts would be inundated with suits brought by professional sports general managers and coaches.

Plaintiff's verbal comments and letter of June 2, 2003 are nothing more than an expression of belief about management theory by a person possessed of some management authority.  Under no circumstance does this expression constitute statutorily-protected speech.  As stated in the cases cited, without having engaged in statutorily-protected speech, Plaintiff cannot bring a legally sound Title VII retaliation action.

## CONCLUSION

As set forth above, plaintiff's claim of discrimination based on unequal pay cannot be sustained in the absence of any similarly-situated co-worker with whom to compare plaintiff's compensation.  Plaintiff's claim of retaliation fails because her complaints about her pay were not tied to assertions of gender discrimination and therefore were not legally protected speech.

- 26-

Based on the uncontroverted facts and the cases cited,
Plaintiff cannot prevail on either of the causes of action
raised in her Complaint.  Defendant, therefore, respectfully
prays that this court enter summary judgment in its favor.

Goodrich Equipment Co. Inc., requests oral argument on this
Motion for Summary Judgment.

Respectfully submitted,

GOODRICH EQUIPMENT CO.,
Defendant,

By:  s/ Mark D. Churchill
     Mark D. Churchill Bar #188372
     Attorney for Defendant
     Churchill & Churchill, P.C.
     1610 Fifth Avenue
     Moline, IL  61265
     Telephone: (309) 762-3643
     Fax:  (309) 762-4690
     E-mail: cclaw@churchillfirm.com

and

     s/ Robert T. Park
     Robert T. Park Bar #11247
     Attorney for Defendant
     Snyder, Park & Nelson, P.C.
     1600 Fourth Ave., Suite 200
     P.O. Box 3700
     Rock Island, IL  61201
     Telephone: (309) 786-8497
     Fax:  (309) 786-0463
     E-mail:  rpark@snyderpark.com

- 27-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Susan Bogart, Robert T. Park, and that all exhibits have been filed conventionally by mailing the same by first-class mail to the Clerk, U.S. District Court, as well as courtesy copy to the Honorable Michael Mihm, this 26th day of August, 2005.

s/ Mark D. Churchill
Mark D. Churchill Bar #188372
Attorney for Defendant
Churchill & Churchill, P.C.
1610 Fifth Avenue
Moline, IL  61265
Telephone: (309) 762-3643
Fax:  (309) 762-4690
E-mail: cclaw@churchillfirm.com
