E-FILED
Monday, 17 October, 2005  07:11:13 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

TERESA M. SCHULTZE,        )
       Plaintiff,           )
                           )    NO. 03  Cv 04089
v.                        )    Jury Trial Demanded
                           )
GOODRICH EQUIPMENT COMPANY,  )
       Defendant.          )

### PLAINTIFF TERESA SCHULTZE'S CDIL-LR7.1(D)(2)
### RESPONSE TO DEFENDANT GOODRICH EQUIPMENT'S
### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Teresa Schultze, by and through her attorney does hereby submit her

CDIL-LR 7.1(D)(2) Response to Defendant, Goodrich Equipment's Motion for Summary

Judgment.

### Plaintiff's CDIL-LR 7.1(D)(2)(a) Introduction to her Response and Opposition to Summary Judgment

Defendant identifies only one prong of a prima facie case of gender

discrimination that, it argues,  Plaintiff Teresa Schultze cannot meet: to wit; that she

cannot identify similarly situated male employees or comparables as that term is defined

under law. Contrary to defendant's contention, Schultze has and can identify

comparables or similarly situated male managers who were paid more than she was at the

outset of performing the Service Manager position that she performed, despite her greater

credentials and experience–that is, Klint Rice her predecessor, who was paid $3000 more

than Plaintiff, who did not have an engineering degree like Plaintiff, did not have the

extensive experience with the repair and care of equipment nor the scope of managerial

experience that Schultze had; and Larry Bitter, Plaintiff's successor, who was paid $4000

1

more than Plaintiff at the outset of the position, despite not having a college degree,

having no experience in the repair and maintenance of equipment comparable to Plaintiff

and who did not have the managerial experience comparable to Plaintiffs.

Defendant argues that as to other male managers at Goodrich, Plaintiff cannot

compare herself to them because they had different titles and performed different duties

depending on the department which they managed. The courts have held that a plaintiff

need not demonstrate an exact correlation with the employee receiving more favorable

treatment–higher pay. Rather, the plaintiff and her similarly situated employees must

only be similar in all the relevant aspects of the position.  It is appropriate for Plaintiff to

compare herself to other managers at Goodrich at the same level, and slightly different

duties and job titles cannot insulate the defendant from claims of sex discrimination.

Despite his promise at the time of her hire to raise Plaintiff to $42, 000 when she began

full time in January 2003 to bring her salary in line with male managers, Goodrich

refused to raise Plaintiff's compensation as promised. These other male managers to

whom Plaintiff was similarly situated were: Dennis DeSplinter, Manager of Agricultural

Sales earning $49, 676.57; Randy Lipes, Manager of Lawn and Garden Sales earning

$44, 213.88; Donald McDonald, Parts Manager earning $46, 616.57.  Plaintiff's

education level, work experience and duties and responsibilities as Service Manager were

equal to or greater than these similarly situated Male managers. These facts support a

prima facie case of gender discrimination based upon her gender. Plaintiff raised this

issue of her unequal discrimination compared to her male managers with Goodrich

verbally beginning in January 2003 and in writing in June 2003.

As to Plaintiff's retaliation claim, defendant argues that Plaintiff cannot meet only

one of the required elements for a prima facie case: to wit; she cannot demonstrate that she engaged in protected speech and complained about sex discrimination. On the contrary, Plaintiff addressed being paid comparably to other manages, all male, at the time of her interview at which time Goodrich promised to raise Plaintiff to $42,000 when she began full time in January 2003. He did not. Thereafter, approximately once or twice a month, Plaintiff raised the issue of her a pay raise to bring her to the same level as the male managers. On May 6, 2003 following her performance review, Goodrich raised her pay to $37,000. On June 2, 2003 in writing Plaintiff raised the issue of Goodrich's failure to pay her commensurate with her comparable male managers and at the $42,000 promised at the time of her hire to be effective January 2003. Schultze again raised it in the morning on July 10, 2003 after Goodrich attempted to accuse her, falsely, of abusing the absentee policy, and prior to Schultze's termination. Goodrich retaliated against Schultze, first by claiming that she resigned; then by demoting her from a salaried employee (like all the managers at Goodrich) to an hourly rate employee; and, finally, by terminating her. Goodrich's conduct constitutes retaliation for Schultze speaking out about pay discrimination.

Further, Goodrich has not identified any legitimate business decision for paying Schultze less than her similarly situated Service Managers or other Managers at Goodrich. Nor has Goodrich offered any legitimate business decision for demoting and then terminating Plaintiff after she questioned Goodrich's refusal to bring her pay commensurate with the male managers. At the time of her termination, Roger Goodrich stated that the reason was "[e]xcessive unauthorized absences is the primary reason, but there are many others", Schultze submits evidence here demonstrating that the allegation

3

of excessive absenteeism is false, constituting evidence of pretext and further evidence of

an unlawful attempt to discriminate. Goodrich has never identified the many other

reasons. It is evident from Roger Goodrich's own correspondence that Plaintiff's

performance was not an issue. And any attempt to do so in a reply brief come too late.

Finally, there is substantial evidence that Roger Goodrich lacks credibility.

Schultze has demonstrated that she has met her prima facie case of discrimination

based upon gender as to her pay and compensation as a manger at Goodrich and has

demonstrated a prima facie case of retaliation. Schultze has also proffered evidence to

demonstrate that Goodrich's alleged legitimate business decisions are pretextual. At a

minimum, Schultze has presented evidence that material facts are disputed.

Accordingly, Schultze respectfully requests that this Court deny defendant's

motion for summary judgment on her gender discrimination and retaliation claims and

set this matter for trial on the merits.

### Pursuant to CDIL-LR 7.1(D)(2)(b)(1), Statements of Fact Plaintiff Concedes To Be Undisputed and Material

1.     That Defendant, Goodrich Equipment Co. Inc., is a John Deere parts and equipment dealer. (Affidavit of Roger Goodrich, Paragraph 2, Exhibit A hereto.)

2.     That Plaintiff was employed as Service Manager at Goodrich Equipment from November 2002 until July 10, 2003. (Plaintiff's Answer to Defendant's Interrogatory No. 3, Exhibit B hereto.)

3.     That Plaintiff was a salaried employee. (Deposition of Teresa Schultze, page 38, Exhibit C hereto.)[1]

---

[1] While Plaintiff admits paragraph 3 of Defendant's Undisputed Fact statement, she notes that no Exhibit C was attached to the Motion for Summary Judgment received by Plaintiff. Further, Plaintiff by admitting the statements of undisputed fact submitted by defendant does not necessarily admit that the admissibility of the documents and affidavits proffered in support of said statements. For example, Plaintiff disputes that the

4

4.      That Plaintiff's starting salary was $35,000 (Plaintiff's Answer to Defendant's Interrogatory No. 6, Exhibit D hereto.)

5.      That Plaintiff received a raise in May of 2003. (Plaintiff's Answer to Defendant's Interrogatory No. 6, Exhibit D hereto.)

8.       That the Service Manager preceding Plaintiff was Klint Rice. (Plaintiff's Answer to Defendant's Interrogatory No. 3, Exhibit B hereto.)

10.      That the Service Manager directly following Plaintiff's employment was and continues to be Larry Bitter. (Affidavit of William Schneider, paragraph 7, Exhibit E hereto.)

11.      That Mr. Bitter's salary in August of 2003 was $39,000. (Affidavit of William Schneider, paragraph 8, Exhibit E hereto.)

12.      That Roger Goodrich was the Plaintiff's supervisor at all times during her employment. (Affidavit of Roger Goodrich, paragraph 6, Exhibit A hereto; Plaintiff's Answer to Interrogatory No. 3, Exhibit B hereto.)

13.      That Plaintiff discussed her displeasure concerning her amount of compensation verbally to Roger Goodrich on more than one occasion and in written correspondence dated June 2, 2003. (Affidavit of Roger Goodrich, paragraphs 10, 14, Exhibit A hereto.)

**Plaintiff's Teresa Schultze's CDIL-LR 7.1(D)(2)(b)(2) Statements of Defendant Goodrich Which Plaintiff Disputes**

6.      That Plaintiff's salary on her final date of employment was $42,000. (Affidavit of Bill Schneider, Paragraph 4, Exhibit E hereto.)

RESPONSE: Plaintiff denies that her base compensation was $42,000 at the time of her termination. Defendant relies on the Affidavit of Bill Schneider for its assertion that Plaintiff's final salary was $42,000. Plaintiff disputes that an affidavit of William Schneider is competent and admissible evidence as it is hearsay and not the best evidence. See Motion to Strike.

---

affidavit of and contents of the affidavit of William Schneider are admissible for the reasons that defendant has not provided the documents underlying  the Schedules and Summary Charts and the charts have been demonstrated not to be accurate.

Further, Plaintiff submits PE7, the May 6, 2003 Memo of Roger Goodrich directing that Plaintiff's base compensation would be raised to $37, 000 per year from the $35, 372.00 base compensation rate Plaintiff was paid at the time she began working for Goodrich Equipment Company.  PE 8 (a) and (b), (June 2, 2003 email from Goodrich to Schultze). Additionally, Plaintiff submits her memo dated June 2, 2003 (one month prior to her termination), in response to Roger Goodrich's May 6 notification of her raise to $37,000 that she had not in fact seen that raise in her prior two pay checks which followed the May 6, 2003 raise and in which she reiterates to Roger Goodrich that she had been promised a pay of $42,000 per year to begin 60 days after she started, or on or about January 1, 2003, at the time of her hiring. PE 8; PE 18,  Schultze Deposition Tr. 44, lines 20-25.

Finally, defendant cannot demonstrate any correspondence directed to Plaintiff and notifying her that her pay had been raised to $42,000 at the time of her termination. In any event, raising Plaintiff's pay to $42,000 at the time of her termination clearly does not remedy the pay discrimination differential underlying Plaintiff's claim for the period of January 2003 through her termination  and from her termination thereafter.

9.     That Mr. Rice had been employed as Defendant's Service Manager for over three years and  was earning an annual salary of $41,366.57 at the time Plaintiff assumed the Service Manager position. (Affidavit of William Schneider, paragraph 6, Exhibit E hereto.)

RESPONSE: Plaintiff denies that Mr. Rice was employed as Defendant's Service Manager for over three years prior to Plaintiff performing those duties. Klint Rice testified that he had been Service Manager beginning in June or July 2000 and that he

6

started at $38,000 at that time. Teresa Schultze took over in the fall of 2002 resulting

in a 2 and a half year period. PE 19, Rice Dep. Tr. 23, lines 12-20; Tr. 26, lines 1-4.

Rice testified further that at the time he interviewed Plaintiff for the Service Manager

position he was earning approximately $42, 500. PE 19, Rice Dep. Tr. 119, lines 12-

13.

### Plaintiff's Teresa Schultze's CDIL-LR 7.1(D)(2)(b)(3) Statements of Undisputed Fact Plaintiff Schultze Claimed to Immaterial to Plaintiff's Discrimination Claims

7.      That only one Service Manager employment position existed at Goodrich Equipment during the time of Plaintiff's employment. (Affidavit of Roger Goodrich, paragraph 8, Exhibit A hereto.)

RESPONSE: Plaintiff disputes Defendant's claim that the fact that there was only

one Service Manager is material to the instant case. Rather, Plaintiff's claims of

gender discrimination include the assertion that she was not being paid comparably to

her similarly situated male Service  managers, which included Klint Rice, the prior

Service Manager; Larry Bitter, the Service Manager that replaced Schultze.

Additionally, Plaintiff's claim include allegations that she was not paid similarly to

other managers at Goodrich, including Jim Luikart, Manager/Comptroller; Denny

DeSplinter, Manager of Sales; Randy Lipes, Manager of C & E Sales Department;

Steve Clementz, Customer Service Representative; and Don McDonald, the Parts

Manager. See PE 2; PE 20 (Roger Goodrich Dep. 5/6/05 Tr. 23, lies 10-11; Tr. 28,

lines 1-9; and Dep. Ex. 1 thereto); and PE 10(a) Email of Goodrich to all managers

regarding management meeting.

14.      That at no time during her employment at Goodrich Equipment Co. did Plaintiff file or threaten to file any complaint of sex or gender discrimination. (Affidavit of Roger Goodrich, paragraph 13, Exhibit A hereto.)

7

RESPONSE: Plaintiff denies that it is material whether she filed or threaten to file a complaint of sex or gender discrimination prior to her termination. On the other hand, Plaintiff did repeatedly raise with Roger Goodrich, the issue of her pay as a manager and that it was not comparable to the male managers. PE 18, Tr. 79-84; PE 8(b);  Plaintiff's Additional Fact Nos. 8-11, 24. Defendant concedes as much in Defendant's Statement of Fact 13, Plaintiff complained about her compensation on more than one occasions with Roger Goodrich and in a memo dated June 2, 2003. That memo is PE 8(b) and specifically states in pertinent part "There is a distinct pay gap between myself and my peers. Equal pay does matter."  Plaintiff included an organizational chart in that memo.

It is not legally necessary to maintaining a suit that Plaintiff threaten to file a complaint or lawsuit or in fact file a suit during the time of her employment to preserve her claims.

On the other hand, Plaintiff timely filed a charge of discrimination, received a notice of right to sue and timely filed this complaint. Plaintiff's charge of discrimination, Ex. A to her Complaint (PE 1) specifically alleged sex discrimination and retaliation.

### <u>Plaintiff's Teresa Schultze's CDIL-LR 7.1(D)(2)(b)(4) Statements of Additional Fact Submitted by Plaintiff Schultze in Opposition to Summary Judgment</u>

1.  Plaintiff began part time as Service Manager with Goodrich Equipment Co. on November 1, 2002.  PE 3; PE 18, Tr. 37, lines 19-21.

2.  At the time of her interview with Roger Goodrich, Goodrich advised Plaintiff that she would be paid at the rate of pay of $35,000 while she was part time as the

8

Service Manager and thereafter raised to $42,000 when she started on a full time basis as Service Manager. This raise was to bring Plaintiff's salary in line with her education, experience and  predecessor Service Manager  Klint Rice, as well as to pay her commensurate with Plaintiff's comparator male managers. PE 18, Schultze Dep. Tr. 38- 39; Tr. 70, lines 19-25; Tr. 71-72; PE 4, Goodrich's email confirming Schultze's rate of pay while part time.

3. Plaintiff  received her Bachelor of Science degree in Engineering in December 2002, from Western Illinois University  and prior to beginning full time employment with Goodrich. PE 18, Tr. 11, lines 16-20; Tr. 12, lines 1-5.

4. Prior to beginning with Goodrich Equipment Company as Service Manager, Plaintiff had substantial experience as a manager, including project manager over moving the manufacturing processes to a new manufacturing technology center while with the Department of Army during which she supervised skilled and unskilled labor (PE 18, Tr. 18, lines 6-20) and a one year graduate leadership program at the United States Department of Agriculture through John Deere Construction Company (PE 18. Tr. 19, lines 2-25; Tr. 20, lines 10) and at John Deere at Horicon Wisconsin, as a technical supervisor or manager. PE 18, Tr. 26, lines 18-25; Tr. 27-28.

5. Also prior to beginning with Goodrich Equipment Company as Service Manager, Plaintiff had substantial experience repairing various types of equipment, including hands on repair and overseeing repair of equipment such as a peripheral equipment operator (PE 18, Tr. 20, lines 18-19, 25; Tr. 21), repair of farming and farming type equipment (PE 18, Tr. 24, lines 22-25; Tr. 25, lines 1-25; Tr. 26-27).

6. Plaintiff began full time as Service Manager in December, 2003. PE 3; PE 18, Tr. 37, lines 19-21. Plaintiff's compensation was not raised to $42,000 at the time she began full time as Service Manager contrary to the discussions with Roger Goodrich. PE 7 Roger Goodrich email raising Plaintiff's $35,00 to $37, 000 effective May 6, 2003.

7. Plaintiff at all times performed to the satisfaction of her employer. PE 18, Tr. 73-75; PE 1, para. 10; PE 9.

8. Beginning in January 2003 and continuing thereafter, Plaintiff spoke to Roger Goodrich at least twice a month concerning the fact that she had not been raised to $42,000 effective January 2003. PE 1, para. 3.

9. On May 6, 2003, Plaintiff met with Roger Goodrich and received a performance evaluation. PE 6. At that meeting, Plaintiff again raised the issue of the fact that her compensation had not been increased to $42, 000 as promised. PE 18, Tr. 74, lines 20-23; Tr. 75, lines 1-25; Tr. 76, lines 22-25; Tr. 77-80.

10. Thereafter, Plaintiff received Roger Goodrich's email dated May 6, 2003 advising that her pay would be increased from $35,000 to $37,000. PE 1, paras. 4-5; PE 7.

11. On June 2, 2003, Plaintiff emailed Roger Goodrich to advise him that she had not received the raise in her pay as reflected in the May 6 email, again raising the fact that her pay had not been increased to $42,000 to bring her equal to her peers, or comparable male managers as promised and requesting that she receive the raise retroactively to January 2003. PE 8(b).

10

12. Plaintiff has never received notice of a pay raise to $42,000 and has never received the additional compensation which to which she claims she is entitled for defendant's failure and refusal to pay her equally with her similarly situated male managers from January 2003 as promised. PE 1, para. 5.

11.  During the months of January and February 2003, Plaintiff had no absences from work due to her own or her families' medical circumstances. PE 13. Plaintiff did attend work related training she was directed to attend during the month of February, 2003, from February 24-28, 2003. PE 13.

12. On or about Sunday March 23, 2003, Plaintiff sustained an injury while biking. PE 18, Tr. 117, lines 12-25.

13. Plaintiff was required to be off of work due to this injury from Monday through Thursday of the next week, March 24-26 for full days and Thursday March 27 for a half a day. PE 18, Tr. 117, lines 21-24; PE13.

14. Plaintiff notified Roger Goodrich who authorized this absence and Plaintiff was eligible to receive paid sick leave at this point as she had completed more than the 30 day eligibility period. Also, Plaintiff had been employed for over three full months and thus had earned approximately three full and a partial day of absence under the Goodrich policy. PE 1(a)(1), Policy 307.

15. When she returned to work, Plaintiff had crutches and a wheel chair. PE 18, Tr. 117, line 25; Tr. 118, lines 1-15.  Plaintiff had a brace on her knee for approximately six to eight weeks. PE 18, Tr. 119, lines 2-6. She worked full time with no additional absences for the months of April and May. PE 13.

16. Thereafter, beginning in or around the end of May and continuing into June, Plaintiff started physical therapy. PE 18, Tr. 119, lines 2-16.

17. In June 2003, Plaintiff had a full day absence (June 16) and two half day absences (June 3 and 30). PE 13. Plaintiff notified Roger Goodrich of her absences during these times. Plaintiff had accrued at least a full day or more of paid sick leave by that time. Additionally, Plaintiff had paid vacation time to which she was entitled. PE 18, Tr. 40, lines 20-25. See also PE 1(a)(1), Policy 303 for time prior to June 16, 2003; See PE 1(a)(2) PE 303 for Vacation Policy after 6/16/03.

18. Plaintiff 's absences from work were due to either her injury or taking her mother to the hospital for treatments for cancer. PE 18, Tr. 123, lines 6-25; Tr. 124.

19. Under Goodrich policies, in addition to having available paid medical leave time, paid vacation and family medical leave. See PE 1(a)(1), Policy No. 601, 602; PE 1(a)(2), Policy No. 601-603.

20. Plaintiff notified Roger Goodrich in addition to others when she would not be at work and was available by her cell phones. PE 18, Tr. 93-95; PE 20, Tr. 118, lines 7-12.

21. At no time prior to the date of her termination had Roger Goodrich or anyone else ever complained to Plaintiff about her absences from work. PE 18, Tr. 95, lines 2-10 or advise her that she would have take unpaid leave as was the practice. PE 22, Tr. 37-43.

22. On the morning of July 10, 2003, Plaintiff met with Roger Goodrich at his request in the conference room at approximately 9 a.m. At that time, Goodrich stated he thought Plaintiff was taking advantage of him. Plaintiff inquired what he meant by

12

that and Goodrich advised that she had been taking off and not fully completing her responsibilities as service manager and that she had used up all of her vacation time. PE 18, Tr. 96-97.

23. Plaintiff asked Goodrich what he was basing the statement on and when he said her attendance record she asked if she could see it. Goodrich told her he did not have to "give her jack shit." PE 18, Tr. 97, lines 22-25; tr. 98, lines 1-2. Goodrich then said to Plaintiff why didn't she just resign. PE 18, Tr. 99, lines 7-10.

24. In response Plaintiff stated that she was not willing to do that, that she had no reason to resign and reiterated her request for her attendance record and raised the issue of her raise to the $42,000. PE 18, Tr. 99, lines 11-24.

25. Goodrich left the meeting and repeated that he didn't have to give her "jack shit". PE 18, Tr. 100, line 24-25; Tr. 101, lines 1-8.

26. Plaintiff then retrieved her time and attendance record from William Schneider, which is document PE 13 and Exhibit 7 to Roger Goodrich's deposition, PE 20.

27. That document makes clear that Plaintiff had not used up all of her paid sick, medical, vacation and family medical leave at the point that Goodrich stated this.

28. Goodrich stated that there was no medical policy at Goodrich contrary to the Policy Manual. PE 20, Tr. 114, lines 7-8. He further stated that he had no knowledge of the Company's policy concerning vacation. PE 20, Tr. 115, lines 13-25; Tr. 114, lines 17-18; Tr. 116-118.

29. After that initial meeting, Plaintiff returned to her office and Roger Goodrich sent out an email to the managerial level and supervisory employees stating that

13

Schultze resigned. PE 10(b); Plaintiff responded stating that she had not resigned. PE

10(b). PE 18, Tr. 101, lines 21-25; Tr. 102, lines 1.

30. Thereafter, Roger Goodrich sent Jim Luikart to Plaintiff's office to advise her

that she would be converted from a salaried to an hourly rate employee. Plaintiff

inquired of Goodrich thereafter as to why she was being singled out to be an hourly

rate employee whereas no other manager was hourly rate. Goodrich shouted "Fuck

you" and walked out of Schultze's office. PE 18, Tr. 102, lines 14-25; Tr. 103, lines

1-15.

31. Later that day, Goodrich terminated Plaintiff. PE 18, Tr. 107, lines 10-15;

Tr. 110, lines 1-112; PE 11.

32. Plaintiff was terminated on July 10, 2003. She timely filed a charge of

discrimination on August 12, 2003 (PE 1(b)), received a notice of right to sue after

September 25, 2003 (PE 1(b)), and timely filed this complaint within 90 days thereof,

or on or about December 24, 2003. Plaintiff's charge of discrimination, Ex. A to her

Complaint (PE 1(b)) specifically alleged sex discrimination and retaliation.

### Plaintiff's Similarly Situated Male Service Managers

33. Plaintiff began work with Goodrich on November 1, 2002 as the Manager

of Goodrich's Service Department. Schultze's starting salary was $35,000. PE 4.

34. Klint Rice, Manager of the Service Department immediately preceding

Plaintiff.  Klint Rice testified that he had been Service Manager beginning in June or

July 2000 earning approximately $38,000 until the fall 2002, when Teresa Schultze

took over. PE 19,  Rice Dep. Tr. 23, lines 12-20; Tr. 26, lines 1-4.  Rice's salary was

$42, 500 and was increased to $43, 924. 49  in December 2002 at the time he was

14

instructing Schultze in the position of Service Manager.  PE 19, Rice Dep. Tr. 119, lines 12-13; PE 17, last line.

35. Larry Bitter took over the position of Service Manager after Plaintiff's termination. He started as a salaried worker in August 2003 at a starting salary of $39, 000.00. PE 11; DUF 10-11[2].  Bitter had been increased to approximately $47,000 at least as of May 2005. PE 20, Goodrich Dep. Tr. 59, lines 10-11.

36.  Klint Rice, the prior Service Manager; Larry Bitter, the Service Manager that replaced Schultze; Jim Luikart, Manager/Comptroller; Denny DeSplinter, Manager of Sales; Randy Lipes, Manager of C & E Sales Department; Steve Clementz, Customer Service Representative; and Don McDonald, the Parts Manager were all managers at Goodrich Equipment Co. during the time period of November 1, 2002, when Plaintiff began in a part time capacity performing the duties of Service Department Manager, and December 2002  through and July 10, 2003, during which time Plaintiff performed the duties of Service Department Manager on a full time basis. See PE 20 (Roger Goodrich Dep. 5/6/05 Tr. 23-24 and Dep. Ex. 1 thereto); and Ex. 1.

37. Each of these Managers are male and were paid more than Schultze to perform their managerial duties. See PE 17.

---

[2] While the support for these statements of fact is William Schneider's affidavit which Plaintiff seeks to strike as inadmissible. See Motion to Strike. The statement of defendant's, when used against them, constitute admissions and therefore as to these statements are admissible. F.R. Evid. 804 and 801(d)(2). Moreover, DUF 10-11 demonstrate that Goodrich's credibility is at issue, as he testified that Bitter started at the same salary as Plaintiff, $35,000 (PE 20, Goodrich Tr. 57, lines 18-19); when in fact, according to defendant's own Undisputed Facts 10-11 assert that Bitter began at $39,000.00.

15

38. As Service Manager, Plaintiff was responsible for all aspects of the business related to service at the dealership including everything from scheduling work, consulting with the sales staff, the managers, resolving discrepancies with customers, with bills, with John Deere personnel, area managers, employees development, budget, monthly reports, billing, to some extent training. She was also tasked with starting an OSHA awareness program with the employees  when Goodrich Equipment received new equipment files, inventory, warranty, parts–used and new parts, pretty much all aspects of the business. PE 18, Tr. 46, lines 21-25; Tr. 47.

**Plaintiff's CDIL-LR 7.1 (D)(2)© Argument in Opposition to Summary Judgment**

Additional Summary Judgment Standards Not Discussed in Defendant's Motion

To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions and affidavits that are part of the record.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The Court must construe all facts in a light most favorable to the  nonmoving party as well as view all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

A court may not weigh the facts, nor make credibility determinations, nor draw competing inferences when ruling on a motion for summary judgment. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 743 n. 2 (7th Cir. 1999).

Where material facts are susceptible to divergent inferences, summary judgment

16

should be denied because inferences should be drawn in the nonmovant's (Schultze's) favor. *Adams v. Ameritech Servs., Inc.,* 231 F.3d 414 (7th Cir. 2000).

In an employment discrimination case, a plaintiff averts summary judgment for the employer by presenting enough evidence, "whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997).

Courts have cautioned about the difficulty of awarding summary judgment as to questions of intent and because intent and credibility are crucial issues, summary judgment should only be granted where, if the record had been that of a complete trial, the defendant would have been entitled to a directed verdict. *E.g. Bellaver v. Quanex Corp.,* 200 F.3d 485, 491 (7th Cir. 2000)(reversing grant of summary judgment to the Title VII gender discrimination RIF defendant).

Direct evidence of discriminatory intent, but such direct evidence-"eyewitness testimony as to the employer's mental processes"–is rarely found. *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133 (2000).

**Contrary to Defendant's Contention, Plaintiff Has Established a Prima Facie Case for Disparate Treatment Based Upon Sex and Retaliation**

A plaintiff alleging disparate treatment under Title VII may proceed on a mixed-motive approach or the *McDonnell Douglas* burden shifting method, also called the pretext approach. *See Texas Dep't Comm'y Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981); *McDonnell Douglas,* 411 U.S. at 802.

In a mixed motive analysis, "the burden of persuasion shifts from the employee to

17

the employer, who must then affirmatively prove that it would have made the same decision even if it had not taken the protected characteristic into account." *Ayala-Gerena* 95 F.3d 86, 95-96 (1ˢᵗ Cir. 1996).

Mixed-motive analysis applies when evidence shows that an employer considered both the prescribed factor ( sex) and one or more legitimate factors (say, competence) in making a challenged employment decision. *Price-Waterhouse v. Hopkins*, 490 U.S. 228, 241-242 (1989). In that scenario, the plaintiff is not obliged to separate out the relative import of each element that went into the decision; rather, once the plaintiff proves that a proscribed factor "played a motivating part" in the decision, the burden of persuasion shifts to the employer, who will be held liable for damages under Title VII unless "it can prove that, even if it had not taken [the proscribed factor of age, race or sex] into account, it would have come to the same decision regarding [the plaintiff]." *Id.* at 242, 244.

Even then, because Congress has reshaped mixed-motive analysis in certain respects, the employee may be entitled to equitable relief so long as she has proven that the proscribed factor played some part in the decisional calculus. *See 42 U.S.C. Section 2000e-2(m); 2000e-5(g)(2)(B); Fernandes v. Costa Brothers Masonry,* 199 F.3d 572, 580 (1ˢᵗ Cir. 1999), as modified.

 Because discrimination tends more and more to operate in subtle ways, direct evidence is relatively rare; when it comes to light , however, a plaintiff can use it to demonstrate "that an illegitimate factor played a substantial role in a particular employment decision." *Id.* at 275. It follows that plaintiff may use the Price Waterhouse mechanism in disparate treatment cases in which they adduce evidence of a discriminatory

18

animus, whereas they must proceed under the conventional McDonnell Douglas framework (commonly called "pretext analysis") in all other cases.

Employees claiming discrimination in employment can also show intentional discrimination using the *McDonnell Douglas* burden shifting method. Plaintiffs utilizing the *McDonnell Douglas* burden shifting formula must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sheehan*, 104 F.3d at 940. This requirement is "not onerous". *Burdine,* 450 U.S. at 253.

To do so, as to each adverse action alleged, a plaintiff must provide evidence that: (1) she is a member of a protected class; (2) she has reasonably performed her job to her employer's satisfaction; (3) she was subject to the adverse employment action–e.g. discrimination in compensation, failure to train, and retaliation resulting in her termination; and (4) other similarly situated employees who were not of the protected class–here males –were treated more favorably. *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 693 (7th Cir. 2000); *Taylor v. Canteen Corp.,* 69 F.3d 773, 780 (7th Cir. 1995).

As to her claim that she was compensated less than similarly situated male employees, Plaintiff has established and defendant concedes that she is in a protected class, female, that she performed to the satisfaction of her employer, that she was subject to adverse employment action–less pay, than similarly situated male employees. Defendant's only contention is that Plaintiff cannot establish that other managers are similarly situated. Def's Argument, p. 9. Defendant makes a factual argument attempting to demonstrate that Plaintiff was not as experienced, or did not have the same level of education, or that the duties performed by certain managers differed from Plaintiffs. Plaintiff has offered evidence contradicting defendant's factual arguments. Legally the distinction defendant

19

seeks to make cannot shield the defendant from summary judgment. *See e.g. Johnson v. Zema Systems Corp.,* 170 F.3d 734, 743-744 (7th Cir. 1999)(holding that "[a]n employer cannot insulate itself from claims of racial discrimination simply by providing different job titles to each of its employees . . . ."). A defendant cannot avoid comparisons, particularly at summary judgment, by assigning persons to unique job categories, because they can still be compared to others at the same level. *Id.* Exact correlations between comparators are not necessary. *Carey v. Mount Desert Island Hospital*, 156 F.3d 31, 38 (1st Cir. 1998); *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352-353 (6th Cir. 1998).

As to the retaliation claim, defendant concedes all factors except that Plaintiff engaged in statutorily protected speech. Def's Argument, p. 18.

Contrary to defendant's contention, Plaintiff addressed the issue of being paid comparably to Klint Rice, her predecessor Service Manager (PAF[3] 2; PE 18 Tr. 38-39; Tr. 71-72) and to other managers all of whom were male at the time she interviewed for the position of Service Manager. *Id.* Plaintiff addressed the promised raise with Roger Goodrich beginning in January 2003 at least 2 times per month. PAF 8. She addressed the inequity in pay and a raise to $42,000 during her May 6, 2003 performance review. PAF 9. Thereafter, in June, Plaintiff forwarded an email to Goodrich in which she raised the issue of pay equity between herself and her peers, including a copy of the organizational chart showing the other managers, and the promised $42,000. PAF 11; PE 8(b). This email was within a month and a couple of days prior to Plaintiff's termination on July 10, 2003. Moreover, Plaintiff raised her salary raise on July 10 prior to Goodrich's "demotion" of

---

[3] Plaintiff's Additional Facts are referenced as "PAF __".

Plaintiff to an hourly employee and then termination of her. Although defendant does not appear to dispute this prong in its argument, Plaintiff is able to also establish a causal link between her protected expression and the adverse action–demotion and termination. *See Culver v. Gorman & Company*, 416 F.3d 540, 545 (7th Cir. 2005).

Having made a prima facie case of gender discrimination and retaliation, the burden shifts to the defendant to demonstrate that it would have made the decision in the absence of discrimination or retaliation. *Culver, supra* at 546.

Summary judgment should only be granted if the defendant "presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive." *Culver, supra; citing Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir. 2002).

In the instant case, at no time until the instant motion for summary judgment did defendant offer the explanation to Plaintiff that she was similar to her predecessor Klint Rice, or her successor Larry Bitter and therefore she was not going to be given the promised raise to $42,000 which would have made her compensation comparable to these two Service Managers. Further, defendant did not prior to this Motion advise Plaintiff that she was not going to be given the promised $42,000 raise to bring her equal to the other managers because they were "comparable" to her for the reasons asserted in its Memorandum. In fact, as Plaintiff has indicated, she is more qualified in education and experience than the comparable managers and according to Klint Rice her position as Service Manager was the hardest manager position and job at the dealership. Thus, defendant's late explanation for not giving Plaintiff the promised raise to $42,000 effective January 2003 has been rebutted and is not supported by the credible evidence. Moreover,

21

defendant appears to conceded that Plaintiff should be paid this amount when it contends that her salary at termination was $42,000. While Plaintiff has never received notice of such a raise, it is immaterial because Plaintiff was fired. Thus, summary judgment should not be granted on Plaintiff's pay discrimination claim.

As to defendant's explanation for demoting and then terminating plaintiff, it contended it was due to "unauthorized excessive" absences and other reasons not identified at the time nor here. PE 11. As Plaintiff has addressed, she did not have excessive absences compared to what she was entitled under the policies and practices of Goodrich. PAF 14, 18-21; PE 13. Roger Goodrich who fired Plaintiff conceded that he did not even know what the policies were at the time of terminating plaintiff nor at the time of his deposition. PAF 28. Moreover, Roger Goodrich's credibility has been attacked. For example, he testified under oath to the Unemployment Security Department that plaintiff resigned.  PE 21, Tr. 17, 18.   That under oath assertion is directly contradicted by Roger Goodrich's own memo announcing the termination of Plaintiff (PE 11) and the email in which Plaintiff disputes that she resigned. PE 10(b).

**Pretext**

"Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes summary judgment". *Zaccagnini v. Chas Levy Circulating Co.,* 338 F.3d 672, 676 (7th Cir. 2003); *Perdomo v. Browner,* 67 F.3d 140, 145 (7th Cir. 1995).

"So [Plaintiff] may avoid summary judgment by pointing to specific facts that place [the employer's] explanation in doubt." *Zaccagnini,* 338 F.3d at 676 citing *Schuster v. Lucent Technologies,* 327 F.3d 569, 578 (7thCir. 2003).

The changed reasoning of the employer can be sufficient to preclude summary judgment because the trier of fact could reasonably infer from that evidence that the defendant's proffered reasons were pretextual. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005-1006 (7th Cir. 2002); *Statler v. Wal-mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999); *Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991).

**Similarly Situated**

In determining whether two or more individuals are similarly situated, this court has centered its analysis on characteristics such as education, experience, performance, qualifications and conduct. *Zaccagnini*, 338 F.3d at 675, citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003).

Schultze has established that she is comparable to the other managers at Goodrich Equipment Co. See PE 2, 17.

First, Schultze like the Service Manager before her (Klint Rice) and the Service Manager after her (Larry Bitter) was a salaried employee. PE 17. Second, Schultze, like the other managers, Jim Luikart Manager of Office and Accounting Department; Dennis DesPlinter, Manager of Agricultural Sales; Randy Lipes, Manager of C & CE Sales; and Don McDonald, Manager of the Parts Department, was on the same level in the Organizational Chart as all other managers at Goodrich during the relevant time period. PE 2. Third, Defendant's Summary Chart Exhibit, PE 17, reflects that Schultze was a manager at the same level as the other managers, Dennis DeSplinter, Randy Lipes, Donald McDonald, and Larry Bitter, Schultze's replacement. PE 17. Fourth, like these other managers reflected on PE 17, Schultze was listed as a salaried employee, along with James Luikart and Steve Clementz. PE 17. Fifth, Plaintiff like the other managers, DesPlinter,

McDonald, Luikart, Rice, Lipes, and Clementz was notified of Roger Goodrich's schedule.
PE 14. See also, recipients of Roger Goodrich's email correspondence PE 10 and 11.

Defendant apparently concedes that of the Manager positions, the Service Manager
was the most complicated job at Goodrich Equipment (Def's Argument p. 14, citing Klint
Rice) but nevertheless argues that Plaintiff should not have been paid commensurate not
only with her similarly situated male supervisors, including Klint Rice and Larry Bitter
who preceded and followed her as Service Manager but also the shop foreperson under
Plaintiff who was not a manager. Def's Argument, pp. 14-16.

As to the education component, Plaintiff's education was equal to or exceeded that
of the other Managers and the individuals identified by defendant in its argument as
similarly situated. [4]At the time Plaintiff was hired at Goodrich Equipment had already
received her Bachelor of Science in Engineering, having received that degree in December
2002. PE 18, Schultze Dep. Tr. 11, lines 16-25; Tr. 12, lines 1-5.  Defendant ignores this
fact in its argument as to Plaintiff's credentials (See Def's Argument, p. 14) but notes the
degree held by Plaintiff's predecessor,  Klint Rice. Def's Argument, p. 14. It appears that
Plaintiff's successor Larry Bitter did not hold a Bachelor's degree as no such degree is
mentioned in defendant's Argument, p. 16.

Additionally, other mangers comparable to Plaintiff without a Bachelor's degree
include Don McDonald, Dennis DeSplinter.  See Def's Argument, p. 15.

As to experience, Plaintiff's relevant experience for the position of Manager of

---

[4] Plaintiff does not contend that she was similarly sitauted to Roger Goodrich or
Mike DeRew. Nevertheless, Plaintiff's educational level exceeded both of these
individuals.

24

the Service Department exceeded that of Klint Rice, her predecessor, Larry Bitter, her successor and the other Goodrich Managers. First, defendant's argue that Larry Bitter's experience exceeded Plaintiff's because he had been in the position of service scheduling at Consolidated Diesel. Def's Argument, p. 16. Although Larry Bitter is within defendant's control, no affidavit of Bitter is offered by defendant to support this assertion. Rather, the defendant relies on Roger Goodrich's deposition. In light of the evidence offered by Plaintiff challenging Roger Goodrich's credibility, this fact is not sufficiently established and should not be believed. Further, defendant does not address Bitter's experience in repairing equipment, one of the department and tasks overseen by the Service Manager nor the handling of skilled and unskilled labor, also at issue in the Service Manager's position. Plaintiff in contrast had experience in repairing equipment (PAF 5); had worked on highly complex equipment and systems PAF 5; had experience in handling skilled and unskilled labor _PAF 4; and had experience in the financial aspect of a department, employee supervision, organization within external and internal departments, employee appraisals, and scheduling. PE 18, Schultze Dep. Tr. 27-28. Experience that exceeds that of Larry Bitter who began as a Service Manager earning a salary in excess of Plaintiff both at the time she began (Plaintiff earned $35,000) and as well when she was raised to $37,000 in June, 2003, after 6 months on the job. PE 7.

Plaintiff's experience also exceeded that of Klint Rice, who preceded her as Service Manager. First, contrary to defendant's assertion, Klint Rice had not had three years as Service Manager. (Def's Argument p. 14); but rather had two years and three months at the time Plaintiff assumed those duties, but was earning $42, 500. See Plaintiff's Ex. 19, Tr. 119-120, Klint Rice Deposition.

25

Defendant cites to Rice's experience, and identifies the fact that prior to assuming the Service Manager position in July 2000, he had been a Service Manager previously. Def's Argument, p. 14. In contrast, Plaintiff had served as a manager for approximately 15 years prior to assuming the Service Manager position at Goodrich. PE 18, Tr. 19-20; PAF 4). Contrary to defendant's assertion, Rice was earning $42,500 at the end of 2002 when he left the Service Manager position and had begun at $38,000. PE 19, Rice Dep. Tr. 119-120 and Tr. 23, lines 17-18, respectively.

Moreover, unlike Rice, who had no experience with mechanical or electronic equipment systems, Plaintiff had a degree in engineering and had hands on experience in the skilled trade of pipefitting, as well as personal experience with farming equipment and hydraulic, pneumatic and other equipment. PE 18, Schultze Dep. Tr. 25, lines 8-16 .

Defendant cites to McDonald's experience supervising 3 employees at Goodrich and DesPlinter's supervision of 2 employees. Def's Argument p. 15. That is in contrast to the approximately 17 people that Plaintiff supervised while at Goodrich. PE 1, para. 12, Plaintiff's Affidavit. Plaintiff supervised the greatest number of employees compared to any other Manager. *Id.*

It is clear from defendant's Argument, p. 15, that DeRew did not have the same level of responsibility or experience that Plaintiff had, let along not possessing an equivalent education and work experience.

**Retaliation and Protected Speech**

Contrary to defendant's contention, Schultze's protesting her compensation, including her lesser salary compared to similarly situated male managers, as well as Goodrich's attempt to demote her alone to an hourly rate employee on July 10, 2003 unlike

26

any other manager does constitute protected speech sufficient to support a retaliation claim in connection with her termination. Def's Argument, p. 18 et seq.

First, Roger Goodrich conceded in sworn testimony before the Department of Employment Security that Schultze questioned Goodrich's decision to make her an hourly employee in contrast to the other managers, all of whom were male. PE 21, Tr. 40; see Also PE 18, Tr. 103, lines 4-10.

Second, as PE 8(b) makes clear, Plaintiff had addressed with Goodrich her pay compared to her "peers" or similarly situated male managers and specifically stated that "equal pay does matter" and placed it in context of the Organizational Chart in which all other managers are male. PE 18, Tr. 85-88.

**Conclusion**

Wherefore, Teresa Schultze respectfully submits that she has proven intentional discrimination by the defendant on the basis of sex and retaliation for pressing her equal pay and the pay discrimination. Defendant's contention that it demoted and then fired Plaintiff are not supported by the credible evidence and are pretextual. .

WHEREFORE, Plaintiff respectfully suggests that this Court deny Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

TERESA SCHULTZE

BY: ss// Susan Bogart
Law Offices of Susan Bogart
30 N. LaSalle St., Ste. 2900
Chicago, IL 60602
(312) 263-0900, ext. 7014
SBogart514@aol.com

27

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that she did cause to be served upon counsel for Defendant, Robert Park, Snyder, Park & Nelson, 1600 Fourth Avenue, Rock Island, IL 61201 and Mark Churchill, Churchill & Churchill, 1610 Fifth Ave., Moline, IL 61265 by electronic filing on this 17th day of October, 2005, Plaintiff's CDIL-LR 7.1(D)(2) Response in Opposition to Summary Judgment and Exhibits in Support thereof and by first class mail, proper postage prepaid on the 17th of October, 2005.

ss://Susan Bogart
Law Offices of Susan Bogart
30 North LaSalle Street
Suite 2900
Chicago, IL 60602
(312) 263-0900, ext. 7014

28