# EXHIBIT

## 21

STATE OF ILLINOIS
DEPARTMENT OF EMPLOYMENT SECURITY
APPEALS DIVISION
BENEFIT APPEALS SUBDIVISION

Teresa M. Schultze,                )
                                   )
    CLAIMANT                       )   HEARING TRANSCRIPT
                                   )   DOCKET NO. 4006368A
                                   )
Goodrich Equipment Company,        )
                                   )
    EMPLOYER                       )

HEARING DATE: April 1, 2004
       TIME:  11:30 A.M.
   LOCATION:  Springfield
    REFEREE:  Terrence Harders

## PARTICIPANTS

   Claimant: Teresa Schultze

             Represented by Susan Bogart,

             Attorney

   Employer: Roger Goodrich

             Jim Luikart

             Represented by Daniel Churchill,

             Attorney

124

EXHIBIT 21

1  R: It's a notice of appeal.

2  CLATTY: But I'm just saying those aren't in front of me.

3  R: I don't know what the protest says because all I did was look at the
4  protest for the date that it was, that it was faxed or rather mailed to the
5  local office. Okay. And I'm not going to look at the protest. I never do
6  look at the protest. Except to look for the timeliness. All right. Now
7  as I was saying all testimony must be under oath or affirmation. So Ms.
8  Schultze, Mr. Luikart, Mr. Goodrich, would you each please raise your right
9  hand? Have you done so, Ms. Schultze?

CL: Yes.

R: Mr. Luikart?

LUIKART: Yes.

R: Mr. Goodrich?

GOODRICH: Yes.

R: Do you swear or affirm the evidence you shall give shall be the truth, the whole truth and nothing but the truth, Ms. Schultze?

CL: I do.

R: Do you swear or affirm the evidence you shall give shall be the truth, the whole truth and nothing but the truth, Mr. Luikart?

LUIKART: I do.

R: Do you swear or affirm the evidence you shall give shall be the truth, the whole truth and nothing but the truth, Mr. Goodrich?

GOODRICH: I do.

R: Okay. Mr. Churchill, which of your witnesses would you like me to take first?

ERATTY: Mr. Goodrich please.

R: Okay.

ERATTY: And I'd ask them to speak up. They are on a speakerphone I believe.

R: Yeah. If they could move closer, maybe that would help.

GOODRICH: Okay.

R: Okay. Mr. Goodrich, what is your position with the employer?

GOODRICH: General manager.

R: And what was Ms. Schultze's job?

GOODRICH: Service scheduling manager.

R: Did she resign or was she discharged?

GOODRICH: She resigned.

R: Okay. And when was that? What date?

GOODRICH: I'm not sure. I'll need to.

R: Okay. By the way I don't know is a perfectly good answer to any question for any of the witnesses.

GOODRICH: INAUDIBLE July.

R: Pardon me?

GOODRICH: Mid-July of 2003.

R: Okay. Mid-July. Okay. Do you know why she resigned?

GOODRICH: Unauthorized, well, she resigned because I asked her to go to a timecard method of reporting her, her uh, time here and she said she would quit before she would use a timecard and I accepted her resignation.

R: Okay. So then you really didn't ask, you ordered her to?

GOODRICH: No, I asked her, I, yes, correctly. I told her that I needed her to go on a time card method of reporting and she said she would quit first.

R: Okay. Uh. Was there any further discussion?

GOODRICH: Yes, there was a lot of discussion that day. It was part of an employee review, numerous reviews that I had had with Ms. Schultze

them.

GOODRICH: Okay. After we left.

ERATTY: So can you do it that way?

GOODRICH: The conference room, I sent out an email and said I have verbally, I have accepted the verbal resignation of Ms. Schultze and carboned the necessary people within our company to know that she had resigned. Instantly after that came the recant from Ms. Schultze that said I'm sorry you must have been mistaken and is to what I believe recognize that she'd made a grave mistake in resigning and uh, that we were going to have to force her out if she was ever going to leave. And so uh, what I did then is I went to Mr. Luikart and I said please present her with a time card. I'd like her, if she's not resigning, I'd like to have her punch a time card because the option was that she would have still employed if she only would have punched a time card. And Mr. Luikart took it back to her and she said she would not accept it from anybody other than me. So I went back to her office, said I would like you to.

(TAPE ENDS)

R: Okay. This is side two for Docket Number 4006368A. Mr. Churchill, do you agree we did not discuss the case while I turned over the tape?

ERATTY: I agree,

R: And Ms. Bogart, do you agree that we did not discuss the case while I turned over the tape?

CLATTY: Yes.

R: Okay. Now you were saying something about I would like you to sign the time card.

GOODRICH: Yes.

ERATTY: First of all I think he was at the uh, when the tape was turned

ERATTY: Objection. That has no material relevance to this proceeding at all.

CLATTY: Well, I think it does.

R: Okay. What is the relevance, Ms. Bogart?

CLATTY: Well, because he claims that in his testimony earlier that the reason he was giving her this time card is because he wanted to make it fair for everybody that she was being paid appropriately.

R: Uh-huh.

CLATTY: So I want to understand what the compensation rate was and therefore how he thought it was unfair.

R: Well, the rate of compensation we're not going to go into but whether she was salaried or an hourly employee, I will allow that answer.

CLATTY: okay. That's what my question is. How was she being compensated, Mr. Goodrich?

ERATTY: Hourly or salary? IS that your question?

CLATTY: Yes.

GOODRICH: hourly.

CLATTY: She was an hourly employee?

GOODRICH: Yes.

CLATTY: And were all the managers hourly employees?

GOODRICH: Within her department, yes.

CLATTY: And who would that be?

GOODRICH: Bob Roman. Mike Derew. Kent Etzel.

CLATTY: Mike Deril?

GOODRICH: Mike Derew D-E-R-E-W.

CLATTY: And who else?

GOODRICH: Bob Roman.

somehow she was being, going to be asked to be treated similarly when she apparently had been not treated similarly. So if she questions why she had to have a time card it may be that she was completely unaware that anybody else had a time card.

ERATTY: Objection, irrelevant.

GOODRICH: I'm sure.

R: And the relevance of that is, Ms. Bogart?

CLATTY: Well, I think it goes to Mr. Goodrich's credibility or the lack thereof.

R: Well.

GOODRICH: She, she INAUDIBLE

R: No, wait.

ERATTY: INAUDIBLE answer, Roger.

R: Wait, wait. Uh. Whether she knew whether other people were hourly employees or not, it seems to me that his testimony is that he called in a insubordinate manager, told her that she was not happy about her attendance and that she was going to have to punch a time card that she said I'll quit first and then later she recanted it and he send a time card down to her. That's what I understand his testimony to be right now. Uh. I don't think that what other managers that is to say which other managers were also paid hourly has anything to do with it.

CLATTY: All right. Well, let me ask this question. Did she quire of you whether there were other managers in the department required to punch a card?

GOODRICH: Yes.

ERATTY: Objection, the same basis, irrelevancy.

R: Well, I'm going to allow, allow the question whether she asked him.

1 returned with the time card and said or maybe he didn't return with the
2 time card but when he returned and told Mr. Goodrich that uh, uh, she, that
3 she would not accept it from anybody but him that Mr. Goodrich then went.
4 CLATTY: Right.
5 R: And I didn't get the testimony that that was at 5:00.
6 CLATTY: I don't believe, well, I think that the timing here is of
7 consequence.
8 R: Okay. Let me ask, let me ask.
9 CLATTY: INAUDIBLE testimony that Mr.
0 R: Well, let me ask though. Mr. Goodrich, was this when Mr. Luikart came
1 back and told you what Mr. Schultze had said?
2 GOODRICH: Yes.
3 CLATTY: Okay. So before the 10:15 time when you came into her office, Mr.
1 Luikart had already been in her office?
5 GOODRICH: Yes.
6 CLATTY: Okay. So you had uh, uh, so there was not longer a resignation in
7 effect?
  GOODRICH: INAUDIBLE she was still in the office so I assumed she was going
  to punch he time clock, card and I handed it to her.
  CLATTY: All right. So your view at 10:15 was that, all right, so she
  didn't resign, you accepted her statement that she didn't resign and you
  took her a time card and said okay, fine, you haven't resigned so now
  you're going to punch this time card?
  GOODRICH: Correct.
  CLATTY: Okay.
  R: Ms. Bogart, can we stop repeating the testimony?
  CLATTY: Well, I.

1  R: Oh, okay.

2  ERATTY: I can't write.

3  R: I just want to make sure that.

4  ERATTY: Making comments like I would if I had a tablet in front of me and
5  I have a tablet and a pen.

6  R: No, I understand.

7  ERATTY: I can't go fast enough to keep up with it.

8  R: All I was concerned was not whether notes were being taken but with
9  whether we were having to wait while Ms. Bogart was typing up something.

10 ERATTY: No. It's my computer that I'm just preparing a log.

11 R: Not a problem.

12 ERATTY: Of the statements made.

13 R: I don't have a problem with that.

14 ERATTY: Okay.

15 R: All I was concerned about is the passage of time.

16 CLATTY: Well, I'm just looking at the note. She, you know rattled on
17 pretty quickly and pretty uh, fast. All right. I guess uh, Mr. Goodrich, I
18 don't think I have any further questions. Uh. When is it that Ms., that
19 you discharged Ms. Schultze for not punching a time card? At what point in
20 the day?

21 GOODRICH: I didn't discharge her.

22 CLATTY: Okay. So at no time did you discharge he?

23 GOODRICH: No.

24 CLATTY: Okay.

25 GOODRICH: She quit.

26 CLATTY: All right. I don't have any further questions.

27 R: Okay. Do you have any questions for Mr. Luikart?

(79)