**E-FILED**
Wednesday, 25 January, 2006  02:41:17 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# ROCK ISLAND DIVISION

| | |
|---|---|
| TERESA SCHULTZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-4089 |
| ) | |
| GOODRICH EQUIPMENT COMPANY, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

Before the Court is Goodrich's Motion for Summary Judgment [#56], Schultze's Motion to Strike Exhibit E (William Schneider's Affidavit) [#65] to Goodrich's Motion for Summary Judgment, and Goodrich's Motion to Strike Schultze's Reply[#77] to Goodrich's Response to the Motion to Strike.  For the reasons set forth below, Goodrich's Motion for Summary Judgment [#56] is granted, Goodrich's Motion to Strike Schultze's Reply [#77] is DENIED, and Schultze's Motion to Strike Exhibit E [#65] is DENIED.  Additionally, as set forth in this Order, Goodrich is required to pay reasonable attorneys' fees associated with the preparation of Schultze's Motion to Strike Exhibit E.

### BACKGROUND

Plaintiff Teresa Schultze ("Schultze") was hired as the Service Manager for Goodrich Equipment Company ("Goodrich") in November 2002. Schultze contends that Roger Goodrich told her at the time that she was hired that she would be hired at $35,000 per year and that her salary

would be increased to $42,000 when she actually worked full-time in the position.[1] Schultze contends that she was never notified that she was receiving the increase to $42,000 per year and that Goodrich engaged in gender discrimination and illegal retaliation against her because Goodrich paid her less than similarly situated male managers and she was fired when she complained that she was not being paid as much as her male counterparts. As the issues are now fully briefed, this order follows.

### A. Goodrich's Motion to Strike Schultze's Reply to Goodrich's Response to the Motion to Strike

In her Motion to Strike Exhibit E of Goodrich's Motion for Summary Judgment, Schultze argues that Schedule 1 and 4, which are attached to the Affidavit of William Schneider, should be stricken because they are summary charts based on original records which have not been made available to Schultze. In response to Schultze's Motion to Strike, Goodrich submitted printouts of Goodrich's permanent business payroll records and identified these records as the source documents for the development of Schedule 1 to Schneider's Affidavit. Schultze then filed a reply to Goodrich's Response arguing that the Court should not consider the newly produced permanent business payroll records submitted by Goodrich in its Response because these records were not produced in discovery despite Schultze's requests. Goodrich then filed a Motion to Strike Schultze's Reply arguing that the Local Rules do not permit a party to file a Reply Brief for any motion other than a Motion for Summary Judgment. Although Goodrich's citation to Local Rule 7.1 is appropriate, in the interest of a complete record, the Court denies Goodrich's Motion to Strike and will consider Schultze's reply to the extent necessary in ruling on the Motion to Strike Exhibit

---

[1] Schultze originally worked part-time as the Service Manager and therefore was paid an hourly rate comparable to $35,000 annual salary for the hours that she actually worked.

E of Goodrich's Motion for Summary Judgment.

**B.      Schultze's Motion to Strike Exhibit E (William Schneider's Affidavit)**

Schultze asks the Court to strike Exhibit E of Goodrich's Motion for Summary Judgment because Exhibit E includes two schedules of payroll information which Schultze believes the Court should not consider because they are summaries and Schultze was never given the opportunity to review the original source records.

The Court agrees with Schultze that Goodrich violated the rules of discovery when it failed to provide Schultze with the information she requested in her Rule 37 letter. However, despite the fact that Schultze argues that she is prejudiced by the inclusion of this information in Goodrich's Motion for Summary Judgment, Schultze does not ask the Court for additional time to supplement her Response to the Motion for Summary Judgment. Rather, Schultze asks the Court to disregard the salary information, even though Schultze needs this information to affirmatively prove her wage discrimination case. In this situation, both parties have erred. Schultze has erred because she knew that this information would be necessary to prove her wage discrimination claim yet she never followed up on her original Rule 37 request. She knew that Goodrich was relying on some of this information because it was referred to during the deposition of Roger Goodrich. On the other hand, Goodrich erred because it had an original affirmative duty to make the payroll records (which Goodrich obviously had access to because they were included in William Schneider's Supplemental Affidavit) available to Schultze. Accordingly, in the interest of having a complete record, the Court denies Schultze's Motion to Strike Exhibit E but awards Schultze reasonable attorneys' fees incurred in the preparation of the motion.

C.  **Motion for Summary Judgment**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 447 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, "[w]here a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

### 1. Gender Discrimination

Title VII of the Civil Rights Act of 1964 makes it an unlawful for an employer to discriminate against an employee on the basis of gender. 42 U.S.C. § 2000e-2(a). To make out such a claim, Schultze must show that she has been the victim of intentional discrimination. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498 , 504 (7th Cir. 2004). Shultze can make this showing using the direct or indirect method. The indirect method is also known as the *McDonnell Douglas* burden-shifting method. *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).

#### a. Direct Method

Under the direct method, employees may use direct or circumstantial evidence. Direct evidence is evidence that "without reference or explanation, ties the illicit motive with the adverse employment action." *Lucas v. Chicago Transit Authority* 367 F.3d 714, 728 n.12 (7th Cir. 2004). Direct evidence is generally not available in employment discrimination cases because it is limited to the employer's admission of discriminatory intent. Neither party argues that Goodrich engaged in direct discrimination and therefore Schultze must proceed under the indirect burden-shifting method.

#### b. Indirect Method

Under the indirect burden-shifting method, the employee must first establish a prima facie case of discriminatory intent by proving certain elements that lead to an inference of impermissible discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792; *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996). To establish a prima facie case of discrimination, Schultze must show that she belongs to a protected class, that she was performing up to Goodrich's legitimate expectations, that she suffered an adverse employment action, and that Goodrich treated similarly

situated employees outside of the protected class more favorably. *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 625 (7th Cir. 2002).

Once a plaintiff has established the prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its employment action. *Steinhauer v. Degolier*, 359 F.3d 481, 484 (7th Cir. 2004). At this point, the employer is entitled to summary judgment unless the plaintiff can present sufficient evidence that the employer's proffered reason is a pretext for discrimination. *Id.* Here, it is undisputed that Schultze is a member of a protected class because she is female. Although the Seventh Circuit has not clarified how the standard four-part *McDonnell Douglas* test should be tailored for wage discrimination claims, *see Adams v. CBS Broadcasting. Inc.* No. 02-3377, 2003 WL 1225738, at *3 (7th Cir. Mar. 14, 2003), the Seventh Circuit has held that under the fourth prong, Schultze must show that male employees who were paid more than she was were similarly situated to her in that they had similar experience, qualifications, and job responsibilities. *Id.*

Schultze claims that she was similarly situated to numerous Goodrich employees. She claims that she was similarly situated to her predecessor as Service Manager for Goodrich, Klint Rice, and her successor, Larry Bitter. She also claims that she was similarly situated to the men who were managers of the other departments at Goodrich during the time that she was the Service Manager. The Court will address each group individually.

### I. Other Service Managers

Schultze first contends that she was similarly situated to Klint Rice, the individual who preceded her in the position of Service Manager. Her claim is based on the assertion that he was paid $38,000 when he started as Service Manager. Additionally, Schultze argues that Rice was not

entitled to be paid more because he did not have an engineering degree like Schultze, he did not have extensive experience with the repair and care of equipment, and he did not have the same experience managing employees as Schultze.

Rice and Schultze are not similarly situated because Rice had experience in the position of Service Manager at Goodrich at the time that he was paid more than Schultze. Schultze conveniently fails to acknowledge that Rice had been employed as the Service Manager for Goodrich prior to receiving $38,000. Rice originally began as the Service Manager for Goodrich at an annual salary of $26,000 and left the position fifteen months later at a salary of approximately $28,000. Only after returning to the position three years later was Rice paid $38,000. In comparison, when Schultze began in the position of Service Manager at $35,000, she had never been the Service Manager for Goodrich. Accordingly, at the time that Rice was paid more than Schultze, he and Schultze were not similarly situated because he had extensive prior experience as the Service Manager.

Next, Schultze argues that she was similarly situated to Larry Bitter, her successor as Service Manager,[2] and that Bitter was treated more favorably than she was because he was paid $39,000 when he began as the Service Manager. In response, Goodrich argues that Bitter was not similarly situated to Schultze because he had over ten years of experience working as a service scheduling manager for Consolidated Diesel at the time that he was hired by Goodrich. Schultze argues that her prior experience was more extensive than Bitter's experience. Schultze claims that her

---

[2] Although the deposition testimony of Roger Goodrich indicates that Larry Bitter's title is actually Service Scheduler and not Service Manager, Defendants do not argue that Bitter's job responsibilities differ significantly from those of the Service manager position. Accordingly, the Court finds for the purposes of this analysis that the position of Service Scheduler and Service Manager are comparable.

experience in repairing equipment, working on highly complex equipment and systems, in handling skilled and unskilled employees, and traditional dealing with traditional management concerns is comparable to that of Bitter.

Schultze has failed to establish that she and Bitter were similarly situated because she has failed to introduce any evidence to disprove Goodrich's contentions that Bitter had ten years of experience working in a similar position to that of the Service Manager at Goodrich. Schultze argues that she and Bitter were similarly situated because she had prior experience doing hands-on repair work and managing employees, yet she has not provided the Court with any evidence to show why her experience is comparable to Bitter's. Admittedly, Schultze has extensive experience managing employees; however, a review of the evidence presented indicates that the primary function of the Service Manager position at Goodrich is to schedule service repair work. Schultze has not set forth any evidence to show that her experience is actually comparable to Bitter's in light of the job responsibilities of the Service Manager position. Accordingly, the Court finds that Schultze and Bitter were not similarly situated because Bitter had more extensive on-point experience than Schultze at the time that he was hired as the Service Manager.[3]

### ii. Other Departmental Managers

Finally, Schultze argues that she was similarly situated to the other male departmental managers at Goodrich and that they were paid more than she was. Schultze specifically claims that she was similarly situated to (1) Denny DeSplinter, Manager of Agricultural Sales; (2) Jim Luikart,

---

[3] Because Schultze was not similarly situated to any other Goodrich employees, it is not necessary for the Court to address the issue of whether she was ever paid $42,000. However, for the record, the Court notes that Schultze's attempt to file a wage discrimination claim absent any proof of what amount she was paid each week appears to be nothing more than a disingenuous attempt to avoid summary judgment.

Manager of Accounting Department and Comptroller; (3) Donald McDonald, Parts Department Manager; (4) Steve Clementz, Customer Service Representative; and (5) Randy Lipes, Manager of Lawn and Garden Sales.

Schultze, however, fails to provide any evidence as to why she should have been paid as much as the other managers in light of their extensive experience working for Goodrich. Each of the individuals that she claims were treated more favorably were not similarly situated to her because each of these individuals had worked for Goodrich for an extensive period of time. For example, at the time that Schultze joined Goodrich, DeSplinter had worked for Goodrich for seventeen years, Luikart for almost three years, McDonald for fourteen years, Clementz for eleven years, and Lipes for five years. Based on their extensive experience, Schultze cannot establish that she was similarly situated to any of them. Even at the time that she was terminated from Goodrich, Schultze had only worked there for eight months. Moreover, even if Schultze could prove that her experience prior to joining Goodrich was comparable to the experience of these individuals, a somewhat doubtful possibility, the Court notes that she has failed to demonstrate that the responsibilities for each individual's position are comparable to that of the Service Manager position. Accordingly, the Court finds that Schultze has not established that she is similarly situated to any of the other Goodrich departmental managers and therefore has failed to establish a prima facie case of employment discrimination based on gender.

**2.  Retaliation**

As Schultze has failed to establish a prima facie case of employment discrimination, Schultze's only possibly viable claim is a claim that Goodrich retaliated against her in violation of Title VII when she was terminated from her position. Title VII forbids an employer from punishing

an employee for complaining about discriminating treatment in the workplace. *Durkin v. City of Chicago,* 341 F.3d 606, 614 (7th Cir. 2003). Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To succeed on a claim of retaliation, an employee must present either direct or indirect evidence of the employer's retaliatory intent. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Under the direct method for proving retaliation, a plaintiff must present direct evidence of: (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 508 (7th Cir. 2004); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004). Although other formulations of a prima facie case of retaliation have been used in the past, the Seventh Circuit has recently clarified that an indirect prima facie case of retaliation requires the following showing:

> [A]n employee must demonstrate that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

*Hilt-Dyson,* 282 F.3d at 465 ( citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 280 F.3d 640, 644 (7th Cir. 2002)); *Spencer v. Thomas*, 2002 WL 378179, at *3 (7th Cir. March 7, 2002); *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). In the absence of direct evidence, "failure

to satisfy any element of the prima facie case proves fatal to the employee's retaliation claim." *Hilt-Dyson*, 282 F.3d at 465. If the plaintiff establishes a prima facie case through the indirect method, the defendant may then come forward with a legitimate, non-invidious reason for the adverse action. *Haywood*, 323 F.3d at 531. "Once the defendant presents a legitimate non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual." *Id.*

In the instant case, Schultze's retaliation claim fails under both the direct and indirect methods because Schultze did not engage in statutorily protected activity. "It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." *Durkin*, 341 F.3d at 615. Although the Seventh Circuit has held that "an employee may engage in protected activity under § 2000e-3(a) even if the conduct at issue does not violate Title VII", the court has never held "that an employer can retaliate when there has been no protected expression" *Id.* (citing *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446. 1457 (7th Cir. 1994)).

Here, Schultze has not submitted any evidence that she engaged in statutorily protected activity. Goodrich admits that Schultze repeatedly expressed her displeasure with the fact that she was not being paid as much as the other departmental managers, that she was not paid as much as Klint Rice at the time that he left the Service Manager position, and that she was not paid as much as some of the employees that she supervised in the Service Department. However, Schultze has not submitted any evidence that she ever said anything to indicate that her gender was at issue.

> Although an employee need not use the magic words "sex" or "gender discrimination" to bring her speech within Title VII's retaliation protections, "she has to at least say something to indicate her [gender] is an issue. An employee can honestly believe she is the

> object of discrimination, but if she never mentions it, a claim of
> retaliation is not implicated, for an employer cannot retaliate when it
> is unaware of any complaints."

*Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 727 (7th Cir. 2003) (quoting *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1008 (7th Cir. 2000). In *Sitar,* the Seventh Circuit held that the employer did not retaliate against the employee despite the fact that the employer transferred her to a less desirable position because the employee had never told her employer that she believed that she was transferred because of her gender. *Id.* at 727–28. Similarly, Schultze suffered an adverse employment action when she was fired from her position; however, like the plaintiff in *Sitar*, Schultze did not engage in any statutorily protected activity. Although Schultze's pleadings refer to the fact that Schultze repeatedly complained to Roger Goodrich that she was not being paid "comparably to other managers, all male", Schultze has not offered any evidence that she ever couched her complaints in gender terms, that she was not being paid as much as the other "male" managers, or that she believed that she was being paid less than the other managers because she was female. On the contrary, the only complaints supported by the evidence presented indicate that Schultze complained to Goodrich because (1) she was paid less than the other managers, (2) she was not paid what she was promised when she started in the position, and (3) she was being paid less than some of her subordinates which she believed was unethical. None of these complaints are statutorily protected activity because they did not serve to put Goodrich on notice that Schultze believed that she was being discriminated against based on her gender.

Furthermore, although Schultze's statement that "equal pay does matter" on its own could possibly imply that Schultze believed that she was being discriminated against, the context in which the statement was made negates that possibility. Specifically, the statement was made in an e-mail

to Roger Goodrich where Schultze complained about the fact that she was not receiving a higher salary. The relevant portion of the e-mail states:

> I was under the impression that after our discussions, coupled with the numerous successes we have accomplished in the Service Department over the past months, that I would have received a salary increase as promised when I was hired as the Service Manager.
>
> There is a distinct pay gap between myself and my peers. Equal pay does matter. It is not ethically a sound decision to compensate a manager less than the technicians that work for that manager. Salary compensation should also be a reflection of the organizational chart.

(Attachment to an e-mail from Schultze to Roger Goodrich dated June 2, 2003.) As indicated in this e-mail, Schultze's complaint about equal pay stems from the fact that (1) she was not being paid what she alleges that she was promised when she was hired, (2) she was paid less than her peers, and (3) she believed that it was unethical for a manager to make less than the technicians below her. This statement did not inform Goodrich that Schultze believed that she was suffering from gender discrimination.

Because Schultze never said anything to indicate that her gender was an issue, Schultze never engaged in any statutorily protected expression, and her retaliation claim must fail. Accordingly, Goodrich's Motion for Summary Judgment is granted.

## **CONCLUSION**

For the reasons set forth above, Goodrich's Motion to Strike Schultze's Reply [#77] is DENIED, Schultze's Motion to Strike Exhibit E [#65] is DENIED, and Goodrich's Motion for Summary Judgment [#56] is GRANTED. Additionally, Goodrich is ordered to pay Schultze's reasonable attorneys' fees associated with the preparation of Schultze's Motion to Strike Exhibit E [#65]. If there is any dispute as to the amount of attorneys' fees, the parties are directed to bring that

to the Court's attention within twenty-one days of the date of this Order and the Court will resolve the dispute.

ENTERED this 25th day of January, 2006.

                                                                            s/ Michael M. Mihm
                                                                             Michael M. Mihm
                                                                    United States District Judge