## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| TERESA M. SCHULTZE,           ) | |
|     Plaintiff,           ) | |
|                ) | NO. 03 Cv 04089 |
| v.           ) | Jury Trial Demanded |
|                ) | |
| GOODRICH EQUIPMENT COMPANY,   ) | |
|     Defendant.           ) | |

### PLAINTIFF'S SUBMISSION OF AUTHORITY IN
### SUPPORT OF ATTORNEY'S FEE REQUEST

Plaintiff's by and through her attorney, and pursuant to this Court's Order of March 1, 2006 Hereby Submits Her Evidence Supporting her Request for Fees and her Hourly Rate and, in support, states as follows.

### Background

1. On January 25, 2006, this Court entered an order granting defendant's Motion for Summary Judgment, denying Plaintiff's Motion to Strike Exhibit E and denying Defendant's Motion to Strike Plaintiff's Reply in Support of that Motion.

2. As part of that ruling, the Court ordered that "[D]efendant is ordered to pay {Plaintiff] reasonable attorneys' fee associated with the preparation of Schultze's Motion to Strike Exhibit E.

3. The court directed that if there was a dispute as to the amount of fees associated with the motion, the parties should bring that to the Court's attention, which Plaintiff's counsel did within the time prescribed by the Court by way of Motion for Instructions. As part of that Motion, Plaintiff's counsel advised the court that she had provided defense counsel with her time and hourly rate associated with that time and that defense counsel had objected to both.

4. On March 1, 2006, this Court directed that the time Plaintiff could be compensated for

was 5 ½ hours and not the additional time expended for preparation of the Reply to the Motion to Strike.

5. Also, on March 1, 2006, the Court directed that the Plaintiff's counsel provide evidence to support her $510.00 hourly rate as the rate charged to paying clients for employment litigation of this nature.

**Legal Issues**

6. As this Court explained, the Seventh Circuit has stated that the reasonable hourly rate, or market rate, is the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in questions. 3/1/06 Opinion, p. 2 citing *Garcia v. City of Chicago,* No. 01 C 8945, 2003 WL 22175620 at *1 (N.D. Ill. Sept. 19, 2003)(citing *Harper v. City of Chicago Heights,* 223 F.3d 593, 604 (7th Cir. 2000).

In the instant case, Plaintiff submits by way of her own affidavit here, Ex. A, and attachments Ex. (A-1, and A-2)[1], the hourly rate fee agreements Plaintiff's counsel entered into in 2004 with the Whitehall Hotel and/or its owners, defendants, in two separate employment discrimination matters pending in the U.S. district court for the Northern District of Illinois: *EEOC v. Whitehall,* 03 C 6851, which was pending before the Honorable John W. Darrah; and *Tuntevich v. WH Properties, SB Yen Management Group, Bert Yen and Su Yen,* 03 C 5714 pending before the Honorable John A. Nordberg. Both agreements reflect Plaintiff's counsel's $510.00 billing rate, at which rate she is currently being paid.

Additionally, Plaintiff's counsel attaches a fee agreement, billing and final payments as Exhibits A-1, A-2 and A-3 in an employment matter in which counsel represented an officer and

---

[1]Plaintiff has pending a motion to file these Agreements under seal and/or portions of these Agreements with information redacted on the ground that they contain attorney client and attorney work product privileged material.

2

director of an entity in negotiating a severance agreement.² As the Fee Agreement dated in August 2005, and Exhibits reflect, Plaintiff's counsel charged an hourly rate of $510.00 in 2005 during the time she performed the legal services at issue in the instant case.

7. This Court stated that Plaintiff has the burden of proving the reasonableness of her hourly rate and evidence of a market rate "includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate." *Court Order 3/1/06, p. 2*. The Court stated that Plaintiff's counsel's affidavit alone cannot establish the market rate for that attorney's services, "such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff's burden." *Court Order 3/1/06, p. 3*.

In addition to her own statements under oath, Plaintiff has submitted as Exhibits A-1, A-2 and A-3, fee agreements with existing clients in which Plaintiff is being paid at the same $510 hourly rate requested here. As the Seventh Circuit has indicated the best measure of an attorney's reasonable fee is that fee the attorney fetches in hourly rate engagements. Indeed, the Court has gone so far as to state that lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court. *Continental Illinois Securities,* 962 F.2d 566, 568 (7th Cir. 1992); *Pressley v. Haeger,* 977 F.2d 295, 299 (7th Cir. 1992). As Judge Easterbrook affirmed in *Gusman v. Unisys,* 986 F.2d 1146, 1150 (7th Cir. 1993), "...the objective is to find the reasonable fee for the work. When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate. *Eddleman v. Switchcraft, Inc.,* 965 F.2d 422, 424-425 (7th Cir. 1992). Judge Easterbrook noted further that because lawyers "do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on

---

²These documents are also subject to the Motion to File Under Seal.

3

their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues. Clients are willing to pay more, per hour, for these better lawyers." *Id.* Thus, "[a] judge who departs frm this presumptive rate must have some reason other than the ability to identify a different average rate in the community."

As the Seventh Circuit has noted, "[o]nly if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including "rates similar experienced attorneys in the community charge paying clients for similar work." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 551, 555 (7th Cir. 1999); *Mathur v. Board of Trustees,* 317 F.3d 738, 745 (7th Cir. 2003). As noted in the case of *Gregory v. Sergeant Weigler, et al.*, 873 F.Supp. 1189, 1193 (C.D. Ill. 1995) quoting the Seventh Circuit, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id., quoting In re Continental Illinois Securities Litigation,* 962 F.2d 566, 568 (7th Cir. 1992); *accord Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993).

In the instant case, Plaintiff's counsel is able to provide not simply her under oath declaration that her hourly rate in 2005 was $510.00 but independent evidence of three clients who pay Counsel at that hourly rate. Under these circumstances, the presumptive rate in the Seventh Circuit would be counsel's hourly rate of $510.00 per hour and that is the basis on which she should be compensated.

Moreover, the fact that the work was performed for a client in the Central District of Illinois where there may be lower "prevailing" rates is not a basis to lower Plaintiff's counsel's hourly fee as noted above. As the Seventh Circuit has noted further: " . . ., if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-

town attorney's rate when calculating the lodestar amount," unless there is evidence that local attorneys could have done as well if they had been available. *Mathur, supra,* 317 F.3d at 744.

However, as Plaintiff's affidavit makes clear, like in *Mathur* where the court rejected a reduction of the out of town attorney's rate based upon local rates, Plaintiff was not able to find local counsel who would provide or were qualified to provide the same level of services provided by Plaintiff's present counsel. See Ex. C, Plaintiff's Affidavit; *see also Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 767 (7th Cir. 1982). Thus, to the extent defendant's objections are directed to Plaintiff's out of town status, these objections and arguments that her rate should be lowered should be rejected.

8. Further, as the evidence submitted by Plaintiff reveals, Plaintiff's counsel's hourly rate in 2005 of $512.00 was reasonable given her background and experience when compared to attorney's in the community performing similar services in like cases. Plaintiff submits as Exhibit A-4, her current resume reflecting that she has been a practicing attorney since 1978, almost 28 years, and during the entirety of that time has been engaged in the practice of law at the federal trial and appellate courts, in addition to state courts. Her practice throughout that time has consisted of trials and litigation in the federal courts. From the time that she entered private practice in 1988, Plaintiff's counsel has engaged in employment litigation, including federal civil rights and Title VII litigation such as is at issue in this case. Plaintiff has, overall, tried more than 50 jury trials and has handled to conclusion more than 20 civil rights matters, with several trials and representations resulting in substantial verdicts and recoveries for the Plaintiffs as is reflected in paragraphs 4-6 of her Affidavit, Ex. A.

While Plaintiff was unable to find an attorney with exactly the same number of years experience and the same level of experience as Plaintiff's counsels with which to compare Plaintiff's hourly rate, Plaintiff submits other evidence which demonstrates the reasonableness of

Plaintiff's Counsel's hourly rate at $510 in 2005.

9. First, an original and updated Laffey Matrix has been consistently used to determine appropriate fee awards by Courts in the District of Columbia. *Interfaith Community Organization v. Honeywell International, Inc.,* , 336 F. Supp.2d 370, 387 (D.C.N.J. 2004). The Laffey Matrix accepted by the Court in *Interfaith* is attached hereto as Exhibit B. That Laffey Matrix, updated, can be found at Snider & Associates, LLC website: http://www.sniderlaw.com/laffey.html. The Laffey matrix reflects a prevailing hourly rate of $574-$598 for attorneys out of law school more than 20 years.

10. Courts have also accepted rate surveys as evidence of reasonable rates prevailing within a district. *See In Re: Miller v. Adco Liberty Mfg. Corp.,* 2005 U.S. Dist. LEXIS 18430 *2 (D.N.J. 2005). Attached as Exhibit C is a survey of rates which include the Chicago land area and reflect rates as high as $800 per hour in 2004.

11. Additionally, Plaintiff submits the attached Exhibit D, a pleading by defense counsel regarding their hourly rates in 2003 for employment litigation in the matter of *Davis v. ISSC,* 97 C 3774. Plaintiff's counsel represented Plaintiff Davis in that litigation and, as paragraph 4 to Plaintiff's Counsel's affidavit, Ex. A, reflects obtained a favorable jury verdict on behalf of Plaintiff Davis. In conjunction with a motion for Interim fees following the jury's verdict, defense counsel filed an opposition in which it identified its attorneys' hourly rates at that time. Dkt. 209. As page 5 of that pleading reveals, Plaintiff's counsel here was charging $467 per hour in 2003. Lead defense counsel, Lawrence DiNardo was charging $490.00 in defending the matter. Ex. D, p. 5.  DiNardo attempted to distinguish his experience from that of Plaintiff's counsel by stating "...yet he has been in private practice 14 years longer than Ms. Bogart." However, a review of Mr. DiNardo's biographical data on his law firm's website: http://www.jonesday.com/lcdinardo/ makes clear that this alleged distinction is misleading at

6

best and, in fact, Plaintiff's counsel's trial and other experience appears to exceed that of Mr. DiNardo despite the fact that he has been out of law school for 4 years longer than Plaintiff's counsel. Mr. DiNardo graduated from law school in 1974. Plaintiff's counsel graduated from law school in 1978. Thus, while DiNardo appears to have gained most if not all of his experience in private practice, Bogart has been practicing just 4 years less than DiNardo but spent a significant period of time trying cases as an Assistant United States Attorney and clerked for a federal district court judge. See Ex. A, para. 1-2, 7-10 and Ex. A-4. Bogart's trial experience exceeds that of DiNardo. Thus, if anything, as of 2003, Bogart's hourly rate at $467 could have been increased. However, no judicial determination of relevant rates was made in the *Davis* matter because, following the jury's verdict, Plaintiff's appeal of certain matters and the submission of her Petition for Attorneys' Fees and Non-taxable costs and Bill of Costs, defendant settled all matters between Plaintiff and her counsel. If Bogart's $467.00 hourly rate in 2003 is updated to the present, it is evident that the adjustment specifically provided for in her Engagement Letters (see e.g. Exs. A-3 of a discretionary 10% adjustment at the start of each year, Bogart's $467 would equal $513.70 for 2004 and $565 for 2005.

12. Additionally, Plaintiff's counsel attaches the affidavit of H. Candace Gorman filed on January 31, 2006 in the matter of *Blount v. Stroud,* No. 01 L 002330, pending in the Circuit Court of Cook County, Law Division. Gorman's affidavit is submitted in connection with a fee application by one of the Plaintiff's attorneys' in that case. Ex. E hereto.

While it is apparent that Gorman has not been in practice as long as Plaintiff's attorney, Gorman having graduated from the John Marshall Law School in 1983 (See Ex. E, para. 1), some 5 years after Plaintiff's Counsel graduated in 1978 and while Gorman's background and experience including trial experience is not as diverse nor as extensive as Plaintiff's counsel (for example Gorman handles lawsuits for Plaintiffs, see paragraph 4 of Gorman affidavit and does

7

not reflect a Martindale Hubbell rating at the AV level such as Plaintiff's counsel), whereas Plaintiff's Counsel has had an "AV" rating throughout her private practice career, and represents Plaintiffs and Defendants in employment litigation in hourly rate litigation, as well as defendants individuals in White Collar Criminal complex criminal cases (see e.g. Ex. E paras. 4 (Gorman) and Ex. A para. 1, 23, 4, 9 and Ex. A-4 (Bogart), Gorman has had judicial determinations of rates which make it clear that Bogart's at $510.00 in 2005 are reasonable and comparable to attorneys in the Chicago market.

For instance, in 2001, Gorman was granted a judicially determined rate of $290 per hour. *See e.g. Kitchen v. TTX Co.,* 2001 U.S. Dist. LEXIS 312 (N.D. Ill. 2001), a rate affirmed by the Seventh Circuit in 284 F.3d 688, 691 (7th Cir. 2002). Bogart's rate at that time was –2001 was $385.00. In 2004, according to Gorman's affidavit, she received a judicially approved rate of $425.00 per hour. Ex. E, para. 8. Plaintiff's counsel's hourly rate in 2003 was $467.50 and was increased just under 10% in 2004 to $510.00 per hour.

13. Contrary to defendant's contentions that this case has been a routine employment discrimination case justifying a rate reduction, the case law cited by Plaintiff above demonstrates that this argument is not sufficient to warrant a reduction under the circumstances. However, as the last paragraph of Plaintiff's Counsel's affidavit, Ex. A, makes clear, the circumstances of this case, caused by defendant's conduct alone, have made it anything but a routine employment discrimination matter. Thus, any suggestion by defendant that the hourly rate of Plaintiff's counsel should be reduced should respectfully be rejected in light of the substantial amount of litigation required as a result of conduct on the part of defendant and its counsel. Actions which added to the complexity and time and expense involved in this case and the basis for the Court's fee award.

WHEREFORE, Plaintiff respectfully requests that this Court award an hourly rate of

$510.00 per hour for the 5 ½ hours of work at issue for a total of $2805.00 in attorneys' fees..

BY: s/Susan Bogart
 Law Offices of Susan Bogart
30 North LaSalle Street, Suite 2900
Chicago, IL 60602
Tele: (312) 263-0900, ext. 7014
Fax: (312) 263-5013
E-mail: SBogart514@aol.com
