COUNTY OF COOK          )
STATE OF ILLINOIS       ) SS.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TERESA SCHULTZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   03 C 34089 |
| ) | |
| GOODRICH EQUIPMENT COMPANY, ) | Honorable Michael M. Mihm |
| ) | |
| Defendant. ) | |

**AFFIDAVIT**

SUSAN BOGART, being duly sworn under oath, states as follows:

1. Affiant is the sole owner of the law firm of Law Offices of Susan Bogart, located at 30 North LaSalle St., Ste. 2900, Chicago, IL 60602 and has been so employed since 1990. The firm specializes in trial and appellate work, principally in the federal and state courts of Illinois, including in the areas of employment and white collar litigation. Affiant has an AV rating from Martindale and Hubbell and has held that rating since 1990. Affiant graduated from law school in 1978.

2. Affiant has had extensive jury trial, appellate, investigate and counseling experience, including in excess of 50 federal jury trials with first chair and high profile experience in the areas of complex and financial litigation, the prosecution of organized criminal and terrorist organizations, federal civil rights and employment litigation, in addition to the defense of federal public corruption, white collar cases and employment discrimination cases. For example, for her work as lead counsel in the investigation and prosecution in *United States v. Fort, Cranshaw, McAnderson, Knox and*

1

*Hawkins* (86 CR 572)(*see United States v. McAnderson*, 914 F.2d 934 (7th Cir. 1990)), affiant received a U.S. Department of Justice Special Achievement Award in 1988 for her prosecution of high ranking members of the El Rukn organization who conspired to commit terrorist acts in the United States on behalf of the Libyan government. Exhibit A (4) attached hereto is a true and correct copy of Affiant's current resume reflecting a summary of her legal background and experience.

  3. Affiant has prosecuted and resolved well over 20 employment related matters and defendant close to 10 such matters, including federal civil rights and employment discrimination cases, including a series of sexual harassment and retaliation cases resulting in substantial changes to the policies and practices of the Chicago Police Department in its handling and instigation of sexual harassment matters and a settlement in 1998 in excess of $700,000.00. *Zoch et al v. City of Chicago.*

  4. Affiant has tried several discrimination matters as lead counsel in which the jury returned verdicts for the Plaintiffs including but not limited to the case of *Davis v. ISSC,* 97 C 3774 before the Honorable Wayne R. Andersen of the U.S. district court for the Northern District of Illinois, which jury trial resulted in a verdict against ISSC (IBM) on June 6, 2002 when the jury found that IBM discriminated against the Plaintiff on the basis of sex under the Equal Pay Act, 29 U.S. C., Section 216 *et seq.* and race under Section 1981 of the Civil Rights Act, as amended, 42 U.S.C. The jury awarded Davis $8, 350 in damages under the Equal Pay Act ("EPA") and made finding that the defendant acted wilfully, increasing the EPA award to $16, 700; the jury also awarded Davis $165,000 in compensatory damages. Subsequently, the Court entered back pay and front pay for a total judgment in the amount of $226, 766.00. Dkt. 139; 182. The Court directed that Plaintiff receive attorneys fees and costs and held hearings on same. Dkt. 185, 210. Subsequently, the parties

settled the entirety of the case, including plaintiff's claims on appeal (Dkt. 156; Appeal No. 03-2176, Dkt. 159) and her claims for attorneys' fees and costs. Dkt. 223. That settlement is confidential.

5. In April 2004, affiant was lead counsel in the trial of the matter of *Reeves v. Federal Reserve Bank of Chicago,* 00 C 5048 pending before the Honorable Blanche Manning in the U.S. district court for the Northern District of Illinois. In that case, the jury awarded Plaintiff Reeves $133,000 in compensatory damages and $266,000 in punitive damages on Reeves' claim that he was retaliated against for protesting race discrimination claims. An additional back pay award was entered in Reeves' favor in the amount of $19, 063 for a total award of $418, 063.00. Dkt. 123. Prior to the Court's award of attorneys fees and costs, the Plaintiff settled all of his pending claims on appeal (Dkt. 180 Appeal No.05-2343), including his petition for attorneys' fees and costs. Dkt. 189.That settlement is confidential.

6. Previous to those matters, affiant has had six figure (confidential) settlements including up to a half a million dollars representing Plaintiff's in employment matters including sex, race and disability discrimination cases, *Frobose v. American Savings and Loan Association*, 152 F.3d 602 (7th Cir. 1998)*; Hightower v. Commonwealth Edison,* 00 C 689; *Kinnavy v. City of Chicago*, 99 C 8183; *Nolan v. IBTW,* 99 C 4524; *Gilbert v. State of Illinois*, 00 C 4003, and *Rosenmayer v. Orthosport, Inc.,* 02 C 3579, all pending in the U.S. district court for the Northern District of Illinois.

7. Affiant has been licensed to practice law in Illinois since 1978, in the U.S. federal district court for the Northern District of Illinois and the Seventh Circuit Court of Appeals since 1978 and has been a member of the Federal Trial Bar for the U.S. district court for the Northern District of Illinois since 1983.

8. Additionally, affiant has been admitted to the U.S. Supreme Court (1998), the U.S. Court of Appeals for the Sixth Circuit (2002), and the U.S. district courts for the Central District of Illinois, Northern District of Ohio and Western District of Missouri.

9. In addition to her self-employment during the period of 1990 to the present, affiant was Senior Investigate Counsel to the U.S. House of Representatives, Majority, during the period of 1998-1999 participating in the Impeachment of William Jefferson Clinton and Oversight Investigations of the U.S. Department of Justice; Of Counsel to the Chicago, Illinois law firm of Sulzer & Shopiro from 1991-1997; an Arbitrator for the National Association of Securities Dealers ("NASD") from 1998 to the present.

10. Prior to her self-employment, from 1978 through 1990, affiant had her own firm from 1978-1979; was a law clerk to the Honorable Stanley J. Roszkowski in the U.S. federal district court for the Northern District of Illinois, Eastern and Western Divisions (1979-1981); was an Assistant United States Attorney in the Northern District of Illinois (1981-1988); and was a partner in the firm of Tenenbaum & Senderowitz (formerly Becker & Tenenbaum) (1988-1990).

11. During the period of 1978-1998, affiant was an adjunct professor of law at Loyola University of Chicago School of Law in the areas of Legal Writing, Appellate and Trial Advocacy and Legislation and the John Marshall Law School in the areas of Trial Advocacy, Evidence, Remedies and Ethics. Affiant has resumed teaching as an Adjunct Professor at the John Marshall Law School for the Spring 2006 semester in the area of trial advocacy.

12. Affiant served as a mediator for Employment and Housing Discrimination cases for the City of Chicago, Commission on Human Relations from 1992-2001.

13. Additionally, affiant has served as a panel member for the Federal Defenders Office for the Northern District of Illinois accepting appointments before the U.S. district court from 1988-1997 and from the U.S. Court of Appeals for the Seventh Circuit from 2000 to the present.

14. Affiant entered into engagement agreement with Teresa Schultze in 2003 which provided for affiant's hourly rate at that time, an hourly rate of $ 467.50 per hour as a means of calculating fees due and owing affiant. That agreement like the 2005 fee agreements set forth in Exhibit (A)(3) herein, provides affiant the right to increase her hourly rate by 10% at the start of the following or next year, which would have resulted in an hourly rate of $514.25 effective January 1, 2004. Affiant set her rate at that time at $510.00 per hour where it has remained.

15.  In litigation involving the prosecution and/or defense of claims, both civil and criminal matters(which do not involve a court appointment under the Criminal Justice Act), affiant bills on an hourly rate basis and uses the same billing rate for all representations. Affiant's hourly rate in 2005 was $510.00 per hour and her rate remains at $510.00 per hour at present.

16. The present fee submission is made in connection with this Court's January 25, 2006 and March 1, 2006 Orders awarding Plaintiff's counsel fees in connection with the Court's Order that Defendant pay Plaintiff's reasonable attorneys' fees associated with the preparation of Plaintiff's Motion to Strike Exhibit E.  The Court's March 1, 2006 Order has determined that the 5 ½ hours Plaintiff's counsel spent in preparing the Motion to Strike Exhibit E to Defendant's Motion for Summary Judgment should be compensated. The Court's March 1, 2006 Order determined that the time spent in filing a Reply in Support of Motion to Strike should not be compensated. Therefore, affiant has not addressed the time factor for purposes of this submission.

17.  The Court has directed that affiant present evidence concerning her hourly rate of

$510.00 per hour in 2005. Exhibits A(1), A (2) and A(3)(Motion pending to File Under Seal or in some redacted form) truly and accurately reflect hourly rate fee agreements in employment related matters in which affiant has been and/or is being paid an hourly rate of $510 per hour. Exhibits A(1) and A(2) are engagements entered into in 2004 and Exhibit A (3) is an engagement entered into in 2005, all at the $510.00 hourly rate. Affiant has included as Exhibit A(3)(b) and ( c) the final billing and payment to Affiant at the $510.00 per hour rate.

18. Affiant is aware of usual and customary rates charged by other attorneys in similar cases in the Chicago area community, the relevant community for determining affiant's hourly rate. *See Mathur v. Board of Trustees,* 317 F.3d 738, 744 (7th Cir. 2003). Plaintiff is aware for example that Judge Castillo awarded Mary Stowell in an employment case the hourly rate of $400 per hour in 1998 or 1999. At that time, affiant charged a rate of $ 300 (1998) to $320 (1999). Mary Stowell was a colleague of affiant's at the U.S. Attorney's Office for the Norther District of Illinois and was admitted to practice in 1975, just three years before affiant. Stowell had trial experience similar to that of affiant's at that time.

19. Affiant's Plaintiff is not aware of any published opinions or court ordered hourly rates for local attorneys who have the same level of experience as affiant and who provide the same type of litigation legal representation including hourly rate representation in employment matters.

20. For example, in the case of *Kitchen v. TTX*, 284 F.3d 688, 691 (7th Cir. 2002), attorney H. Candace Gorman was awarded an hourly rate of $295 in 2001. At that time, affiant's hourly rate was $385.00. Affiant's experience level however exceeded that of Gorman at the time. For example, affiant graduated from law school in 1978; Gorman graduated in 1983. See Ex. E. Bogart has had an AV Martindale Hubbell rating since she was in private practice in the

late 1980's; Gorman does not appear to have any such rating. Where Affiant has hourly rates which are paid by her clients and represents both employees and employers in employment discrimination matters; whereas, Gorman apparently represents primarily if not exclusively Plaintiffs. See Ex. E.

21. Similarly, Plaintiff's counsel has extensive trial experience that Gorman has not had.

22. Gorman received a court ordered fee of $450 per hour in 2004 (See Ex. E, para. 8), a point at which Plaintiff's rate was initially $467 per hour and raised during 2004 by just under the 10% increase provided in her engagement letters to $510 per hour, where it has remained since that time.

23. At the time Plaintiff first contacted affiant prior to the instant litigation, Plaintiff advised affiant that she was not able to obtain representation from qualified attorneys in the Rock Island, Illinois nor Davenport Iowa areas. Plaintiff advised affiant that she had contacted two female attorneys in the Davenport Iowa area, one of whom was LeeAnn Tyler, and Michael Warner of the Rock Island, Illinois area. See Ex. F, Plaintiff's Affidavit.

24. Affiant states that the present litigation contained several unusual circumstances. First, it is unusual to have an attorney who is a fact witness appear as counsel for a party and refuse to remove himself from the proceedings. It is unusual to have to engage formally in a motion to disqualify that attorney. A motion that the court granted. Second, it is unusual to have a defendant lodge unsubstantiated counterclaims against a plaintiff alleging conversion and violations of Title VII. And it is further unusual to require that Plaintiff's counsel issue a Rule 11 sanctions letter addressing this fact where, as here it was the defendant's own evidence that made clear that the allegations were not substantiated. On May 11, 2005 Plaintiff's counsel forwarded a

letter to defense counsel pursuant to the Safe Harbor provisions of Rule 11, of the Federal Rules of Civil Procedure advising that she believed the Counterclaims filed by defendant against the Plaintiff in this case were baseless and without legal or factual merit. Those counterclaims included conversion (Count I); punitive damages stemming from conversion (Count II); and Title III wiretap violations (Count III). This motion was based on the testimony of Roger Goodrich who testified under oath that there was no basis to believe that Teresa Schultze refused to comply with a directive that she punch a card on July 10, 2003 at the time she was fired and that the evidence was in fact to the contrary. It was based further on discovery which revealed that assertions in paragraphs 8, 10-14 were not supported by the documents and evidence produced by defendant and that there was no evidence that Schutlze "intercepted" anything contrary to the allegations in the complaint. Defendant in July 2003 withdrew with prejudice the counterclaims which had been the subject of substantial discovery. Third, it is unusual in affiant's experience to have a party refuse to provide business records which it contends underlie a summary chart and to have those documents produced for the first time in support of a summary judgment Motion.

**FURTHER AFFIANT SAYETH NAUGHT**.

Pursuant to Title 28, U.S.C. Section 1746, "I declare under penalty of perjury that the foregoing is true and correct. Executed on March 14, 2006."

> Susan Bogart
> ss//:Susan Bogart
> Susan Bogart
> 30 North LaSalle St., Ste. 2900
> Chicago, Illinois 60602
> (312) 263-0900 ext. 7014
> (312) 263-5013
> SBogart514@aol.com

EX. A.